STATE of Missouri, Respondent,

v.

Ronald C. STOCKBRIDGE, Appellant.

No. 28704.

Missouri Court of Appeals,
Kansas City District.

April 4, 1977.

Robert G. Duncan, David W. Russell, Robert E. Hart, Duncan & Russell, Donald J. Quinn, Kansas City, for appellant.

John C. Danforth, Atty. Gen., J. Michael Davis, Asst. Atty. Gen., Jefferson City, for respondent.

Before SWOFFORD, P. J., PRITCHARD, C. J., and DIXON, J.

SWOFFORD, Presiding Judge.

Appellant (defendant) was convicted by a jury of the offense of a felonious assault upon a police officer and sentenced to two (2) years imprisonment. After an unavailing motion for a new trial, he brings this appeal, raising three points upon which he seeks reversal. These do not include any claim as to the sufficiency of the evidence so the facts forming the basis of the conviction need only be summarized.

At approximately 4:45 a. m. on July 7, 1975, Robert L. Page, a police officer employed by the Gladstone Public Safety Department, Clay County, Missouri, was on duty, in uniform, when he received a radio dispatch to investigate a prowler in the parking area of the French Riviera Apartment complex. Upon arrival at that location at about 5:10 a. m., he alighted from his vehicle and began investigating the parking area. At one corner of the parking lot he heard a "clicking sound like someone was trying to start an engine * * * just like the solenoid was clicking over". Thereafter, he observed a large white male who was dressed in dark trousers, blue corduroy coat, wearing black gloves and carrying a bag on his right shoulder, from which several tools were visible. The officer confronted this individual and attempted to conduct a search; the man failed to assume a search position; a struggle ensued during which the man dropped the tool bag and attempted to flee; the officer grabbed him by the back coat collar; and the man struck the officer with his right elbow in the solar plexus and broke loose from the officer's grasp and fled. During this struggle Officer Page had radioed for back-up assistance, and Officer Rhoad arrived at the parking lot in time to observe the suspect in flight. The man ran toward the Rhoad vehicle through the headlight beams over the car's fender or hood and disappeared.

The record is not clear as to the events leading to the defendant's arrest but he was indicted September 24, 1975, and learned from his parents on September 27, 1975 that the Kansas City police were looking for him, and turned himself in on that day.

■ Both Officers Page and Rhoad made positive in-court identification of the defendant as the suspect encountered in the parking lot and, while this identification was strongly and somewhat effectively challenged during the trial, the dispute was properly for the jury's determination.

The state also relies upon the testimony of one Chris Barker, an acquaintance of the defendant, who testified that on July 13, 1975, over a cup of coffee in a restaurant in Kansas City, the defendant told him he had "almost got caught" stealing a car in Clay County about a week before and had struck a policeman or security guard with his elbow and escaped. At the time of his testimony, Barker was under a conviction on a guilty plea to auto theft in Kansas City and a similar charge was pending against him in Clay County. He denied any plea bargain on the Clay County matter involving his testimony against the defendant.

The state showed that a stolen motor vehicle was found in the apartment parking area following the incidents of the early morning of July 7, 1975, but no direct evidence was proffered that the defendant had any connection with such automobile.

The defendant testified in his own behalf on February 24, 1976 and denied that he was the person involved in the assault upon Officer Page or had any knowledge of it until September 27, 1975, when he heard of the police looking for him and voluntarily turned himself in to the authorities. He could not remember his activities or whereabouts on July 7, 1975. He categorically denied the conversation testified to by state's witness Barker. He testified he was 20 years of age, regularly employed, lived with his parents, and has never been convicted of a crime. Both of his parents also testified for the defendant.

The defendant asserted in his Motion for a New Trial and as his first point on this appeal a matter of great and dispositive concern. He argues that because of the highly inflammatory and prejudicial comments of the assistant prosecuting attorney in his closing arguments to the jury he was denied his constitutional right to a fair and impartial trial. His counsel convincingly asserts that, even though these arguments were not the subject of objection by his trial counsel (not his counsel on this appeal) the point should be considered as plain error affecting substantial rights under Rule 27.-20(c), Rules of Criminal Procedure.

The arguments of the assistant prosecuting attorney, set out below, must be considered against the background of the trial record. The only reference contained in the entire record concerning the defendant's prior criminal record came in his direct examination, as follows:

"Q. Have you ever been convicted of a crime?

A. No, sir, I have not.

Q. Have you ever stolen a car?

A. No, sir, I have not."

No attempt was made by the state either in cross-examination or by means of other evidence to refute this categorical denial of any past offenses.

The state relies upon two items of evidence in an attempt to justify the prosecutor's arguments. Officer Page testified that after the suspect had fled, he went back to the lot and retrieved the shoulder bag and "the car *that he was supposed* to have driven up in"; ran a check on it and learned it had been stolen from Columbia, Missouri on June 26, 1975. There was no direct proof that the suspect had driven up in this car or had any connection with it. Neither was there any direct evidence linking the defendant to the bag of tools nor were these tools introduced into evidence. The state's case rests solely upon the identification of the defendant by the policemen as the man in the parking lot.

The state justifies the argument upon the basis of the testimony of Officer Page in recounting his attempt to search and question the suspect. He stated:

"Q. Did you have reasonable belief that he had committed a crime?

A. Yes, sir.

Q. What was the crime?

A. Tampering with a motor vehicle.

Q. Did you ever ask him if he had been tampering with a motor vehicle?

A. He never gave me the chance.
* * * "

Obviously, this was a reflection of the officer's thoughts or suspicions at the time (not of past events), unsupported by any fact in evidence. He admitted that he was attempting to apprehend the suspect for interrogation; that he had no intention then to place him under arrest; that he proposed to search for weapons or "frisk" him for the officer's personal protection; and, that at no time did he see the suspect even touch any of the cars in the parking lot.

There is not a shred of testimony or documentary evidence that the defendant had any past criminal record of any kind.

Against this background, the assistant prosecuting attorney in his closing argument stated:

"Now, let's look at the scene of the crime first for our evidence. First, *whoever the individual was* that was there was a *professional*. It wasn't a run of the mill 'Let's rip off a car' type operation. The evidence clearly shows * * *that whoever was there * * * was prepared to steal cars. * * * whoever was there was a professional; they* knew what they were doing. *They* came to steal cars. * * *

* * * * * *

* * * Of course there weren't any fingerprints. That's a calling card. *You don't do that when you're stealing cars* * * * " (Emphasis supplied)

Continuing, the prosecutor dropped the use of the plural pronoun "they" and declaimed to the jury, in direct reference to the defendant:

" * * * Why did he drop his mechanic's bag? *Because he's a car thief; be-*

cause he was armed; because he was dangerous; because he could be identified and he wanted to get away. *That's what you're dealing with.* * * * It does not change the fact that this individual identified by the police officers was north of the river, *attempting to steal cars*, got caught and assaulted the police officer. * * * " (Emphasis supplied)

Warming to his theme, the assistant prosecutor stated in his closing argument to the jury:

" * * * *This man is a car thief, a professional thief.* * * *

* * * * * *

* * * *A professional car thief* attempting to evade or otherwise avoid being detected or identified. * * *

* * * * * *

* * * *He's a pro.* He's avoiding trouble, staying out of prison. * * * " (Emphasis supplied)

█ The courts have long recognized that in the trial of a criminal case the prosecutor occupies a quasi-judicial position and is, at once, charged with the duty to thoroughly and vigorously present the state's evidence, on the one hand, and on the other hand, conduct these duties in such a manner as will afford the defendant a fair and impartial trial. He shares this latter responsibility with the trial court. *State v. Tiedt*, 357 Mo. 115, 206 S.W.2d 524, 526[1, 2] (Banc 1947); *State v. Allen*, 363 Mo. 467, 251 S.W.2d 659, 662[4] (1952); *State v. Selle*, 367 S.W.2d 522, 530[22] (Mo. 1963); *State v. Heinrich*, 492 S.W.2d 109, 114[8] (Mo.App.1973); *State v. Thomas*, 535 S.W.2d 138, 140[2] (Mo.App.1976); *State v. Hicks*, 535 S.W.2d 308, 311[2] (Mo.App. 1976).

█ As a natural result of these duties a prosecutor should scrupulously refrain from making statements calculated to engender prejudice or excite passion against the defendant. He should refrain from injecting into the trial matters not properly before the jury which would tend to add to the onus under which the defendant necessarily labors by reason of the charge upon which

he is standing trial. *State v. Selle*, supra, at l.c. 530[22, 23]; *State v. Hicks*, supra, at l.c. 311[2, 3].

█ As a natural concomitant of this rule, a prosecutor "should never be permitted to apply unbecoming names or epithets to the defendant, or refer to the defendant or his alleged accomplice, *as a criminal of any class or kind.* * * * " (Emphasis supplied). *State v. Taylor*, 320 Mo. 417, 8 S.W.2d 29, 37[25] (Mo.1928). See also: *State v. Leonard*, 182 S.W.2d 548, 551[5] (Mo.1944); *State v. Stroud*, 362 Mo. 124, 240 S.W.2d 111, 113[9] (1951); Cf. *State v. Harris*, 351 S.W.2d 713, 715–716[1–4] (Mo.1961); *State v. Turnbull*, 403 S.W.2d 570, 572–573[5] (Mo.1966).

The arguments of the prosecuting attorney in this case far exceeded propriety and the rules of restraint properly imposed upon him by reason of his quasi-judicial position under the above-stated principles.

The defendant was charged with assaulting an officer, not with car theft; no prior criminal conviction was shown, and yet in his arguments the prosecutor referred to him as a "professional", a "pro", a "professional car thief" and as engaged in "stealing cars", and thus branded him with being a "criminal" of "that class or kind". Nothing in this record would justify the application of those names or epithets to this defendant nor were these arguments in reply to any argument or statements of defense counsel. It is apparent that these arguments constituted inflammatory appeals to arouse the jurors to personal hostility toward the defendant as a hardened criminal.

█ While no objection was made to these arguments during the trial, the matter was raised in the motion for a new trial. The cumulative effect of these arguments, the very lack of objection, the failure of the trial court to take any action even in the absence of objection, resulted in a prejudicial and inflammatory trial atmosphere, deprived the defendant of his right to a fair and impartial trial, resulted in manifest injustice cognizable under Rule 27.20(c), Rules of Criminal Procedure, as plain error, and

requires the granting of a new trial. *State v. Heinrich*, supra.

This conclusion makes it unnecessary to decide the defendant's second and third points asserting error in the trial court's ruling excluding alibi witnesses under the provisions of Rule 25.31 and Rule 25.34, Rules of Criminal Procedure, and calling into question the constitutionality of Rule 25.34. The matters will doubtless not arise upon a new trial.

Reversed and remanded for a new trial.

All concur.