**STATE of Missouri, Respondent,**

v.

**Jerry Lynn SCILAGYI, Appellant.**

No. 29836.

Missouri Court of Appeals,
Western District.

April 2, 1979.

Lane L. Harlan, Timothy C. Harlan, Boonville, for appellant.

John D. Ashcroft, Atty. Gen., Steven Scott Clark, Asst. Atty. Gen., Jefferson City, for respondent.

Before HIGGINS, Special Judge, Presiding, and SWOFFORD, C. J., and WELBORN, Special Judge.

ROBERT R. WELBORN, Special Judge.

A jury in the Cooper County Circuit Court found Jerry Lynn Scilagyi guilty of burglary in the second degree and stealing in connection therewith. Acting under the second offender law, the court fixed the punishment at seven years' imprisonment for the burglary and three years for the stealing, the sentences to run consecutively. Judgment was entered accordingly and this appeal followed.

In April, 1977, Don's Amusement Enterprises, Inc., was operating a carnival in the Boone Village Shopping Center in Boonville.

On April 13, 1977, Donald Forcier, president, treasurer and general manager of Don's Amusement Enterprises, Inc., went inside the carnival trailer office at around 1:30 or 1:45 P.M. Everything was in order when he left after a few minutes, locking the outside door with a padlock. When he returned to the trailer shortly after 2:00 P.M., he discovered that the office had been broken into. A file cabinet drawer was open and a cash bag that had been on the floor was missing. The bag had contained primarily nickels and dimes and had been about three fourths full. Forcier did not know how much money was in the bag.

Forcier went out and found all the members of his crew except Jerry Lynn Scilagyi were on the lot. Scilagyi had been hired by Forcier a few days previously before the carnival got to Boonville. While Forcier was out of the trailer he had seen Scilagyi "prancing across the shopping center parking lot, headed toward the Pizza Hut," at about 2:10 P.M.

At a little after 3:00 P.M., April 13, James Russell Bridgewater, a taxi driver, picked Scilagyi up at the Pizza Hut and took him to a trailer in the carnival area. Scilagyi got out of the cab, went behind a trailer and returned carrying clothes on hangers and a white laundry bag. Scilagyi asked Bridgewater the fare to Columbia and was told it was $15.00. He asked Bridgewater to take him to the Hall Way Club, located next door to the cab office. This was done, Scilagyi got out of the cab and took his things with him. Ten minutes later, he appeared at the cab office and asked Bridgewater to take him to Columbia. Scilagyi put his clothes in the rear of the cab and a sack containing a six pack of beer on the floor of the front seat. He sat on the passenger side of the front seat.

As the cab drove toward Columbia, it was stopped by Boonville police. The officers ordered Scilagyi out of the cab, handcuffed him, and took his clothing from the cab. Bridgewater handed the police the sack containing the beer. Scilagyi was put in the police car. When Bridgewater went back to close the door on the passenger side of the cab, he saw something sticking out from underneath the front seat of the car. He pulled it out and found it was a green

money bag. He handed the bag to the police officer. When the contents were examined and counted, it was found to contain $98.45 in nickels, dimes and quarters. Forcier identified the bag found in the cab as the one missing from the trailer office.

The foregoing is essentially the evidence relied upon by the state at the trial of Scilagyi on the burglary and stealing charge. Appellant's first point is that the evidence is insufficient to sustain the conviction. His position is that the state's case rested upon appellant's possession of recently stolen property and that there was no evidence of exclusive possession of the property by appellant; that the best the state's evidence showed was joint possession by appellant and Bridgewater and that when proof is based upon joint possession, " * * * there must be something else in the evidence to connect the defendant with the offense." *State v. Pruett,* 522 S.W.2d 823, 824 (Mo.App.1975). Appellant's argument overlooks Bridgewater's testimony that he had never seen the bag before he noticed it under the seat. In viewing the sufficiency of the state's evidence, that testimony must be taken as true and Bridgewater's ignorance of its presence in the cab would exclude his conscious and knowing possession of the bag, although it was in his cab. Therefore, the case is not one for review under principles pertaining to joint possession.

A more difficult question arises in appellant's contention that a trailer such as that involved in this case cannot be the object of a burglary under Section 560.070, RSMo 1969, since repealed, Laws of Mo.1977, p. 658, § 1. That section provided:

"Every person who shall be convicted of breaking and entering any building, the breaking and entering of which shall not be declared by any statute of this state to be burglary in the first degree, or any booth or tent, or any boat or vessel, or railroad car in which there shall be at the time any human being or any goods, wares, merchandise or other valuable thing kept or deposited, with the intent to steal or commit any crime therein, shall, on conviction, be adjudged guilty of burglary in the second degree."

The carnival office was in a 40-foot semi-trailer, parked at the shopping center. An eight to ten-foot area in the rear of the trailer contained the files and records of the operation, kept in cabinets. Next to that area was a lounge, in which there was a couch which opened into a bed, a couple of chairs and a bar. There was a bedroom facility adjoining the lounge area and in the front of the trailer was a conference room. Forcier was "staying" in the trailer while the carnival was in Boonville. The trailer was on wheels and moved from place to place with the carnival. It was not equipped for water or sewer hookup.

In *State v. Ryun,* 549 S.W.2d 141 (Mo. App.1977), this court upheld a conviction of burglary of a dwelling house where the structure involved was a "typical mobile home building" which had been moved in place and remained there three years and had been used during that time as the sole place of abode of its residents. The court took note of the fact that the building had been "skirted" from floor to ground to block drafts and that it was connected to an electric power line. 549 S.W.2d 144. The structure thus had attained some degree of permanence of location. Whether, other than the fact it was apparently moved on its own wheels, the structure embodied characteristics of a "trailer" as that object is defined in the motor vehicle laws, Section 301.010(29), RSMo 1975 Supp., does not appear.

In this case, the instrumentality involved was designed and used to travel on the highways, remaining at one location only for the time that the carnival stayed there. According to Forcier, the carnival usually moved once a week in the spring and twice a week in the summertime. The record does not show how long the carnival had been in Boonville but it did leave, going to Macon. The state introduced in evidence the certificate of title to the trailer. That document is required of trailers subject to the motor vehicle laws. § 301.190, RSMo 1969. When asked whether or not the trailer was "skirted," Forcier said it had a "pos-

sum belly," an enclosed compartment fastened underneath it which traveled as a part of the trailer.

If this conviction is to stand, it must be on the basis that the trailer was a "building" within the meaning of Section 560.070. The appellant emphasizes the lack of any degree of permanency of the modification used to make the trailer immobile. In this case, the only thing that had been done was to detach the tow vehicle and there had been no modification of the trailer to make it immobile.

Respondent asserts that the mobility of the structure is not significant and that the statute was intended to be inclusive of "a broad range of structures" and aimed primarily at the protection of the property within a structure rather than the structure itself.

■ However, a fundamental rule of construction in criminal law is that statutes defining crime must be construed liberally in favor of the defendant and strictly against the state. *State v. Kayser,* 552 S.W.2d 27, 29 (Mo.App.1977). Any fair doubt as to the meaning of the statute must be resolved in favor of the accused. *State v. McClary,* 399 S.W.2d 597, 598–599[1–3] (Mo.App.1966).

Webster's Third International Dictionary (1961) defines "building" as follows: "a constructed edifice designed to stand more or less permanently, covering a space of land, usu. covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure—distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy * * *."

That the legislature had such meaning in view in the enactment of Section 560.070 is apparent from the specific inclusion of boats, vessels, railroad cars, tents and booths. The respondent argues that the statute applies to "edifices and structures of the same nature and kind as the specific

terms" and that the generic term "any building" necessarily included types that might be invented in the future. However, the specification of removable structures or instrumentalities as the subject of burglary is clearly indicative of the fact that such structures were not within the generic term "any building." To extend the statute to apply to movable structures or instrumentalities not enumerated would require implication inimical to the rule of strict construction. The fact that the same reason might apply for prohibiting breaking and entering of a trailer as a railroad car affords no reason for extension of the statute beyond its terms.

Cases from other jurisdictions are not particularly helpful, inasmuch as the language of the particular statute is of major significance. In *State v. Ryun,* supra, the court did cite with approval *State v. Ebel,* 92 Mont. 413, 15 P.2d 233 (1932), in which a movable sheep wagon occupied by a sheep herder as his dwelling was held to be a "house" and "building" within the burglary statute there involved. Respondent relies upon that holding in this case. Other than the fact that the structure was erected on a "wagon" and was "portable," there is no reference to what, if any, extent the structure there involved had acquired permanence in its location. The court was satisfied that the structure was a "dwelling house" because it was used for the purpose of habitation and housing the goods and chattels of the sheep herder and was enclosed by four walls, roofed over. The court said that the structure met the requirements of a "building." 15 P.2d 235.

In *Sanchez v. People,* 142 Colo. 58, 349 P.2d 561 (1960), the court found that a telephone booth was a "building" within the statute there involved. Of interest is the following comment of the court regarding a 1957 amendment of the statute which defined burglary in terms of entry with felonious intent into " ' * * * any building, railroad car, or trailer * * *.' " (349 P.2d 561–562):

"It seems obvious that the legislature, in adopting the amendment in question,

sought to have one overall generic term, i. e., 'building' encompass not only the variety of structures it had listed before, but also to cover all types of structures known but not then included and possibly other types which might be invented in the future. Since a building is generally considered to be an edifice, erected by art, and fixed upon or over the soil (1 Bouv.Law Dict. Rawle's Third Revision, p. 400), the legislature in 1957 wisely left in the statute 'railroad car(s)' and added 'trailer(s)' since these objects generally are not stationary and because trailers have been developed since the original act was adopted. Thus now all stationary structures within Colorado, no matter of what substance they may be constructed, are within the term building, so long as they are designed for use in the position in which they are fixed. As a separate class it provided that both railroad cars and trailers, which were in widespread use in 1957 both as dwellings and for the storage or carriage of personal property, were included as the subject of burglary."

*Commonwealth v. Mayer,* 240 Pa.Super. 181, 362 A.2d 407 (1976), held that a completed house trailer, stored on a lot, was a "building or occupied structure" within the meaning of the Pennsylvania burglary statute. However, "occupied structure" was defined as "[a]ny structure, vehicle or place adapted for overnight accommodation of persons * * *." 18 Pa.C.S. § 3501. The question thus presented in that case was whether or not the house trailer was adapted for overnight accommodation of persons.

In connection with that case, it may be noted that the Revised Missouri Criminal Code which became effective January 1, 1979 (Laws of Mo.1977, p. 658) defines burglary in terms of unlawful entry of "a building or inhabitable structure." § 569.-160 and § 569.170, pp. 694–695. The term "inhabitable structure" is defined as including "a ship, trailer, sleeping car, airplane, or other vehicle or structure" where any person lives or carries on a business. § 569.-010(2)(a), p. 692.

In *State v. Warner,* 187 Neb. 335, 190 N.W.2d 786 (1971), the structure involved was a 60-foot trailer which had been divided into three offices and a cashier's cage. "A fiber glass skirt had been placed around the base of the trailer, and wrought iron stairs erected at the entrance. The trailer was wired for electricity and equipped with a burglar alarm." 190 N.W.2d 787. The court held that the jury could find that the trailer was in fact a building. It also noted that the statute made an "office" the subject of burglary.

Appellant relies upon *People v. Matusik,* 63 Mich.App. 347, 234 N.W.2d 517 (1975). In that case, the question was whether or not a 1961 or 1962 Chevrolet van, used to store auto parts, with doors and fenders attached, all wheels in place but with all tires flat, old license plates and a motor which was complete but which the owner had never tried to run, was a "building" within the burglary statute or a motor vehicle within the statute prohibiting unauthorized entry of "motor vehicles." The court, relying upon *State v. Ridinger,* 364 Mo. 684, 266 S.W.2d 626 (1954), concluded that the inoperable condition of the van did not foreclose its being a "motor vehicle." The court then stated (234 N.W.2d 519):

"The mere fact that the van could not be taken out and immediately driven does not necessarily make it a 'building'.

"[3, 4] It is not the fact that a vehicle is immovable that makes it a 'building', but the permanency of the modifications used to make that vehicle immovable. For example, the Court in *People v. McLaughlin,* 156 Cal.App.2d 291, 319 P.2d 365 (1957), held that an old passenger bus converted into an office was a 'building.' In that case, the wheels had been removed, and the bus sat on concrete blocks. It is clear that the difficulty of converting the structure back into an operating bus led the Court to decide that it was a 'building'. See also, *State v. Warner,* 187 Neb. 335, 190 N.W.2d 786 (1971), where a trailer was held to be a 'building'. There, the trailer was set on a concrete base surrounded by a fiberglass skirt, had an attached stairway, and was wired for electricity.

"[5] We hold that the Chevrolet van here was a 'motor vehicle' and not a 'building.'"

Given the language of the statute under which the appellant was charged with burglary, the contention that the structure involved was not within those covered by the statute must be sustained. This case is distinguishable from *State v. Ryun*, supra, on the basis of the modification of the structure there involved, designed to make its location to some extent permanent and the fact that it had been located for three years at one location and used as the sole dwelling place of its residents.

The respondent's contention that, under *State v. Ryun*, supra, the charge here could have been that of burglary by entering a "dwelling house," and therefore the conviction should be upheld, is without merit. Regardless of the application of *State v. Ryun* in such case, the appellant was not charged with burglary of a dwelling house and that charge was not submitted to the jury. To uphold the conviction on that basis would ignore the basis upon which appellant was tried and convicted.

The evidence would support a charge of stealing. However, the stealing was charged in connection with a burglary and the reversal of the burglary conviction requires that the stealing conviction also be reversed. *State v. Cline*, 447 S.W.2d 538 (Mo. banc 1969).

Reversed and remanded.

All concur.