**STATE of Missouri, Respondent,**

v.

**Lee Roy PATTON, Appellant.**

**No. WD 30946.**

Missouri Court of Appeals,
Western District.

Dec. 31, 1979.

Motion for Rehearing and/or Transfer
Denied April 7, 1980.

Application to Transfer Denied
May 1, 1980.

930

Daniel L. Radke, Asst. Public Defender, Buchanan Co., St. Joseph, for appellant.

Thomas L. Crossett, Asst. Pros. Atty., Buchanan Co., St. Joseph, for respondent.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

MANFORD, Judge.

This is a direct appeal from a conviction by a jury for assaulting a police officer, a misdemeanor under §§ 557.220 and 556.270, RSMo 1969.[1] The jury affixed punishment of 30 days in the county jail. The judgment is affirmed.

Appellant challenges the sufficiency of the evidence to sustain his conviction, which necessitates a recitation of the facts of record. This is point four charged as error. The other three points alleged are (1) error by the trial court in sustaining state's objection to the questioning of a state's witness upon cross-examination, thus preventing appellant from challenging the credibility of the witness; (2) error by the trial court in permitting rebuttal witness to testify because there had not been a proper foundation laid for such testimony; and (3) error by the trial court in permitting the prosecutor to argue that appellant was not a believable person because such argument was not supported by evidence and was aimed at denigrating the character of appellant.

On the evening of March 15, 1978, at approximately 11:00 p. m., two St. Joseph, Missouri police officers, Officer Michael C. Shute and Officer Robert Finley, were dispatched to answer a disturbance at Homer's Tavern, which is located at Tenth and Mitchell Streets in St. Joseph, Missouri. The tavern is connected to Mary Ann's Restaurant.

The officers arrived and removed appellant's son, Aubrey Patton, from the bar. The officers testified that as they were placing Aubrey under arrest, another individual named Nason Goddard proceeded to step between Officer Finley and Aubrey. A struggle between Officer Shute and Aubrey Patton ensued. Officer Finley then proceeded to struggle with Nason Goddard.

The evidence reveals that at about this time, a third uniformed officer, Lawrence D. Jefferson, Jr., arrived on the scene. Officer Jefferson testified he observed the other two officers with Aubrey Patton and Nason Goddard. Officer Jefferson then testified he attempted to assist Officer Shute in subduing Aubrey Patton, but that he was directed by Officer Shute to assist Officer Finley in his efforts to subdue Nason Goddard. Officer Jefferson further testified that as he moved toward Goddard and Officer Finley, he observed an individual, who was shouting obscenities, standing in the doorway to Homer's Tavern. He testified the obscenities were directed toward the officers. Officer Jefferson testified that he directed this individual to go back inside or be placed under arrest for loud and obscene language. Officer Jefferson then advised this individual that he (the individual) was under arrest and directed him toward a car parked adjacent to the curb. Officer Jefferson testified that during the search of this individual, someone jumped on his back and struck him on the shoulders and head with his fist.

The testimony of the officers then established the parties involved in the disturbance were subdued and taken to the local police station.

In addition to the three police officers, who described the struggle and arrest, the state called two other witnesses. The first was LaVonna Burton, who testified she was in Mary Ann's Restaurant and could see the disturbance through the front window. The pertinent portion of her testimony confirmed the struggle between the officers and others and that one of the officers had a man on his back at one point in the struggle.

The final witness for the state's case in chief was Jerome Komer. This witness testified he was in Homer's Tavern and observed two police officers remove a patron from inside the premises. He then stated that appellant left the tavern, and he identified him as one of the persons later fighting with a police officer on the ground. He testified he observed the appellant on the officer's back.

1. Effective January 1, 1979, § 557.220 is now 565.070 and § 556.270 is now 557.021, pursuant to the disposition table of the new criminal code.

The evidence for the defense consisted of appellant's own testimony, whereupon he denied ever having jumped on the back of a police officer. He testified he had been in the tavern playing pool. He had gone to the restroom and upon his return, someone advised him the police had his son outside. He testified he stepped outside the tavern door whereupon an officer immediately struck him with a flashlight.

Further defense evidence consisted of the testimony of Beverly Crist and Geraldine Ming. Beverly Crist testified she was in Mary Ann's Restaurant and through the window, observed two policemen enter the tavern. She further testified that a fight or struggle ensued between two police officers and two young men. It was this witness's automobile that Officer Jefferson referred to as the automobile at the curb. This witness testified that the officers kept hitting the young men. She testified that the older man (appellant) did not resist or fight with the officers, but rather, one of the officers hit the older man with a flashlight.

Witness Geraldine Ming testified she too was in Mary Ann's Restaurant and overheard the barmaid tell a couple of the patrons to quiet down or she (the barmaid) was going to call the police. Witness Ming observed two police officers arrive at the bar. She got up from her table and walked over to the window, where Beverly Crist was standing, watching the events take place outside. Witness Ming testified she saw Officer Shute and another man wrestling, and saw Officer Shute handcuff this individual. She next observed the appellant fall to the ground and a fight ensue, involving appellant and the officers. She testified she never observed the appellant strike any of the police officers.

It must be noted from the record that the view of those witnesses inside Mary Ann's Restaurant was partially obstructed because of the physical relationship between the tavern and the restaurant and the witnesses' relative point of observation.

The jury heard the evidence and rendered its verdict of guilty, assessing a sentence of 30 days in the county jail against appellant.

As to appellant's alleged error on the insufficiency of the evidence, appellant, in support of such contention, argues that the evidence is insufficient to show that he wilfully and knowingly struck Officer Jefferson, and at the time that he knew Officer Jefferson was a member of the St. Joseph, Missouri Police Department.

■ An attack upon the sufficiency of the evidence requires a review of the evidence most favorable to the state with all evidence tending to support the verdict to be considered as true. Contrary evidence is to be disregarded and every inference supporting the verdict is to be indulged, see *State v. Lee*, 556 S.W.2d 25 (Mo.banc 1977), vacated on other grounds, 439 U.S. 461, 99 S.Ct. 710, 58 L.Ed.2d 736 (1978) and Rule 27.20.

The record discloses the direct testimony of five witnesses (the three police officers and witnesses Burton and Komer, who observed appellant on the back of Officer Jefferson, fighting with Officer Jefferson).

■ While the evidence as to whether or not appellant jumped on the back of Officer Jefferson and fought with Officer Jefferson was for the trier of fact to determine, and that evidence was controverted, the responsibility of this court encompasses the determination of whether such evidence was sufficient to sustain the conviction. The record in this case reveals that this evidence was sufficient, and point four raised by appellant is ruled against him, see *State v. Smith*, 298 S.W.2d 354 (Mo.1957); *State v. Solven*, 371 S.W.2d 328 (Mo.banc 1963); *State v. Roseman*, 583 S.W.2d 232 (Mo.App. 1979) and *State v. Reeves*, 559 S.W.2d 300 (Mo.App.1977).

Appellant contends error in the trial court's refusal to permit him to cross-examine Officer Jefferson and to attack the credibility of this witness for bias and prejudice. The pertinent testimony reads as follows:

"Q. Do you intend to work on the police force—

MR. CROSSETT: (Asst. Prosecuting Attorney) Your Honor, I object to that.

THE COURT: Sustained.

Q. Have you worked with these officers after March 15th?

MR. CROSSETT: Your Honor, I object to that as being irrelevant.

THE COURT: Objection sustained. It is irrelevant."

Appellant contends that the trial court's ruling prevented him from developing or showing bias and prejudice on the part of the witness. In addition to the above questions, this witness was asked a series of questions encompassing the questions of whether or not (1) he had discussed the instant case with his two fellow officers; (2) he had prepared a written statement regarding the instant case; (3) he had discussed the case with the prosecutor; (4) he had testified in municipal court; (5) he had overheard the testimony of his two fellow officers during the municipal court proceedings; (6) his employment with the St. Joseph Police Department had been continuous since the date of the offense for which appellant stands convicted; and (7) his employment involved working with his two fellow police officers prior to and since the date of the offense for which appellant stands convicted.

On further cross-examination, this officer was asked the particular questions referred to above and the ruling sustaining the objection was made by the court.

■ Appellant's contention on this point cannot stand as the record reflects appellant was not prevented from questioning this officer to establish bias and prejudice. On the issue of examination of witnesses, the trial court is invested with discretion as to the scope and extent of examination of witnesses. It is correct that the trial court cannot prevent cross-examination of a witness for purposes of developing bias and prejudice, but the trial court is empowered with discretion as to the limit or nature of such inquiry and to the relevancy and materiality of the questions propounded.

■ The trial court's ruling went to the relevancy of the question. Appellant made no offer of proof as to how this question would develop bias and prejudice. The case of *State v. Roesel*, 574 S.W.2d 944 (Mo.App. 1978) is dispositive of this issue. In that case, the accused, in his attempt to develop the bias of a state trooper, inquired if the trooper banked at the same bank as another witness for the state. The court's ruling sustaining an objection because of relevancy was upheld. The reviewing court declared, at 946:

"Also, in attempting to establish the bias of the State trooper, defendant asked the trooper if he banked at the same bank with Mr. Haight. Objection was sustained, and no further pursuit of this issue was made although defendant's counsel had already established that the trooper had known Mr. Haight 'a long time'. While bias or prejudice of a witness is a legitimate concern, the trial court is vested with broad discretion in regulating cross-examination. Absent a showing of an abuse of discretion, we will not interfere with the trial court's ruling, [citing] *State v. Howard*, 564 S.W.2d 71 (Mo.App.1978) . . .

Additionally, we observe the defendant's counsel failed at trial to make any effort or offer before the trial court to establish the relevancy or materiality of his questioning or what the witness would state but chose, instead, to remain silent after the objections and rulings had been made. He is too late now in his complaint, [citing] *Thayer v. Sommer*, 356 S.W.2d 72 (Mo.1962); *United States Fire Insurance Co. v. Madesco Investment Corp.*, 573 S.W.2d 442 (Mo.App.1978)."

See also *State v. Johnson*, 549 S.W.2d 348 (Mo.App.1977).

In the instant case, both upon direct and cross-examination, it was shown this officer had continued to work with his two fellow police officers. His continued work with them in the future was irrelevant and the ruling by the trial court was properly within its discretion. There is no prejudice shown by this ruling and the conclusion by

appellant is without merit under the facts of the instant case. The cases cited by appellant on this point, *State v. Solven, supra, State v. Woods*, 508 S.W.2d 297 (Mo. App.1974) and *Thornton v. Vonallmon*, 456 S.W.2d 795 (Mo.App.1970) have been reviewed by this court and have been found to be nonpersuasive and uncontrolling on this issue. In *State v. Solven, supra*, the issue was bias and prejudice upon a witness's refusal to discuss the case with opposing counsel. In *State v. Woods, supra*, it was held error to prevent cross-examination of a witness upon the question of a motive. In *Thornton v. Vonallmon, supra*, denial of any cross-examination was held to be error.

Point one is ruled against appellant.

Appellant's second point alleges the trial court erred in permitting the state's rebuttal witness to testify relative to reputed prior inconsistent statements by appellant upon the state's failure to lay a proper foundation for the admission of such statements.

The record herein reflects appellant did not properly preserve this alleged error for this appeal because the interposed objection was as to the *improper form of* the question. Upon his motion for new trial and on this appeal, appellant attempts to broaden the theory of the objection. Allegations of error in a motion for new trial must be based upon the objection made at trial, see *State v. Gadbury*, 558 S.W.2d 426 (Mo.App.1977). Assignments of error on appeal must be based upon the same theory as that of the objection at the time of trial, see *State v. Healey*, 562 S.W.2d 118 (Mo. App.1978).

In the argument portion of his brief, however, appellant contends the admission of such rebuttal evidence was plain error. Review is thus made pursuant to Rule 27.-20(c).

Appellant argues this precise alleged error upon two grounds. He alleges in one instance that the state must affirmatively establish that a statement made by a defendant during custodial interrogation was voluntary. In support of this position, ap-

pellant refers the court to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) and *State v. Fair*, 467 S.W.2d 938 (Mo.banc 1971). These authorities are cited for the proposal that in addition to the voluntariness of the statement, the state must affirmatively establish that a defendant was aware of his right to remain silent and of his right to counsel during interrogation. Further, appellant contends if any such statement is obtained because he was not apprised of his right to remain silent or of his right to counsel, such statement is inadmissible unless the state affirmatively establishes that such statement was voluntarily given. Appellant cites *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

Appellant's contention on the issue of voluntariness is correct only to a point. The failing in the instant case is that appellant at trial failed to challenge any statement for voluntariness. The record shows that when the rebuttal witness was tendered, appellant interposed objection as to the propriety of form of the questions propounded by the state. Appellant neither objected on the grounds of involuntariness nor requested a formal hearing for purposes of determining the voluntariness of any statement made by him.

While it is true that the *Miranda v. Arizona, supra* decision and other federal and state decisions safeguard the rights of an accused regarding the right to remain silent and to have counsel, this does not equate a complete prohibition against the use of statements or confessions at other stages of a trial proceeding, see *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

The right to challenge the voluntariness of a statement or confession, of course, was established in the landmark decision of *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). In our own jurisdiction is found a case which, on this particular point, squares with the instant case. That decision is *State v. Jackson*, 448 S.W.2d 895 (Mo.1970), which illustrates fail-

ure by the accused to present timely objection to the voluntariness of a confession, or in the alternative, a request for a formal independent hearing on the issue of voluntariness. The court pointed out the trial court was not required to conduct such hearing on its own motion and absent any proper objection or request for a hearing. *State v. Jackson, supra,* was reaffirmed in *State v. Harper,* 465 S.W.2d 547 (Mo.1971).

As regards the issue of voluntariness of the statement, appellant's argument fails and no plain error resulted upon the admission of the rebuttal evidence on the grounds of involuntariness.

■ The remaining question to be resolved is whether the admission of the rebuttal evidence constituted plain error upon alleged failure to properly lay a foundation for its admission. The answer to this question rests upon the testimony of record weighed against the requisite standard or rules of evidence.

§ 546.260, RSMo 1979 provides that an accused shall not be required to testify on his own behalf, but if he elects to do so, he is subject to cross-examination and his testimony may be contradicted or impeached in the same manner as the testimony of any other witness in the case.

Regarding rebuttal evidence offered as impeaching evidence on prior inconsistent statements, certain limitations have been imposed to safeguard the rights of an accused. The voluntariness aspect has already been addressed above and the remainder of the question turns upon the reliability of the impeaching evidence.

Certain requisites to the introduction of such rebuttal evidence have long been an established segment of the law. Appellant cites for the court *Huskey v. Kane Chevrolet Co.,* 173 S.W.2d 637, 640 (Mo.App.1943); *State v. Bennett,* Mo., 87 S.W.2d 159, 162 (1935) and *State v. Thompson,* 280 S.W.2d 838 (Mo.1955). *Huskey v. Kane Chevrolet Co., supra,* a case involving a workmen's compensation claim, provides that prior statements of a witness cannot be properly shown for the purpose of discrediting other testimony without first asking the witness if he made the statement. *State v. Bennett, supra,* provides that a foundation must be laid, and the rule requires the attention of the witness must be called to the time, place, circumstances and person to whom the statement was made. *State v. Thompson, supra,* holds, at 841, "[I]n order to show by other witnesses prior inconsistent statements on a material matter for the purpose of impeachment, a foundation must first be laid by interrogating the witness concerning the alleged inconsistent statements."

In a more recent decision, *State v. Kelly,* 539 S.W.2d 106, 112 (Mo.banc 1976), in citing *State v. Vaughn,* 501 S.W.2d 839, 842 (Mo.1973), the State Supreme Court declared, " 'A foundation must first be laid by asking the witness on cross-examination if he made the statement, and obtaining either a denial or an answer that he failed to remember it.' "

In addition to providing the basic rules under which such rebuttal evidence is admissible, the referred to authority clearly denotes that the substance rather than the form of the question or questions is paramount.

The instant case turns upon whether or not the evidence supports appellant's contention that no foundation was laid in preparation of admission of the rebuttal evidence. The final disposition must include whether or not plain error occurred as a result of the admission of the evidence.

This was a trial which arose from appellant's having been charged with the offense of assaulting a police officer. The state's evidence included testimony that appellant had jumped on the back of a police officer during the fracas which was taking place between the officers, appellant's sons and one Nason Goddard.

Appellant testified in his own defense. Upon cross-examination, he denied jumping on the back of any officer. He testified that he attempted to exit a doorway of the tavern and was immediately struck with flashlights by one or more police officers.

As regards the question of no proper foundation for purposes of rebuttal testimony upon prior inconsistent statements, the testimony of appellant becomes the focal point. Upon cross-examination, appellant was asked the following pertinent questions:

"Q. You saw an officer frisking down someone on a car?

A. I saw him over there and saw his hands on the car and that's—I didn't get a chance to do any more looking because after the guy come at me with the brown mustache—

Q. You didn't run over there and jump on his back?

A. I never jumped on none of their backs.

Q. Do you love your sons?

A. I would be a poor father if I didn't. Sure I love them.

Q. Did you think they were in trouble at that time?

A. No.

Q. They had one son on the pavement and you say—

A. At the time I seen that I knew he was in trouble, but I hadn't committed no crime. The cop hit me in the eye with the flashlight.

Q. You say your son down there on the pavement and the officer on top, is that right?

A. Right.

Q. You saw your other son being frisked down by another officer?

A. Right.

Q. And you are telling me that—

A. I am under oath.

Q. —that you didn't go over and jump on that officer's back to protect your son?

A. I swear I did not.

\*   \*   \*   \*   \*   \*

Q. Did you happen to talk to Sergeant Terry Boyer down at the police station?

A. He came back to the cell that morning and talked to me. He wanted to know if I needed medical attention the next morning and I told him I didn't need no sympathy from the cops.

\*   \*   \*   \*   \*   \*

Q. Let me ask you this. Did you talk to Terry Boyer at the station that morning and he ask you about medical attention and did you say anything else to him at that time?

A. Well, he asked me approximately about what happened. I told him verbally. I mean I just told him there, talking to him through the cell door. I never signed no statements. I know Boyer and I told him just what happened.

Q. Let me ask you did you tell him that you saw Aubrey on the ground and an officer hitting him at that time, relating other facts to him?

A. I told him I saw an officer hitting him.

Q. *Did you also tell him that you couldn't let that happen, so you got into it too?*

A. I did not. That is being added to that statement.

Q. You didn't say that at all?

A. No, I did not."

Then, on redirect examination, appellant was asked the following:

"Q. Do you remember talking to Sergeant Boyer at the police station?

A. Yes.

Q. What do you remember telling him?

A. Oh, I told him approximately about how things happened in the tavern and that I went to the restroom, walked out the door and got hit in the eye and about the same thing I told you.

Q. You told him you had been struck several times?

A. That's right.

Q. Told him about everything that you said on the stand today?

A. That's right."

Following the above-mentioned testimony, the state called Officer Terry Boyer to the stand and the record reflects the following testimony:

"Q. State your name for the Court, please.

A. Terry Boyer.

Q. Are you employed?

A. Yes, by the St. Joseph Police Department.

Q. What are your duties with the St. Joseph Police Department?

A. I am a jail sergeant.

Q. I direct your attention to whether or not you have had a conversation with Lee Roy Patton at the jail?

A. Yes, I have.

Q. I specifically direct your attention, asking you what was said in that conversation?

A. As I recall—

MR. WARREN: (Attorney for Patton) I object to this. It is improper impeachment.

THE COURT: It is improper rebuttal. Sustained.

Q. I specifically direct your attention to anything said about Lee Roy Patton's motive in this particular incident.

MR. WARREN: I object to that. It is an improper form of question.

THE COURT: The objection is overruled. You may answer.

A. He stated to me as he came out of the bar that he saw the officers and his son involved in a scuffle *and he couldn't allow that to happen, that is why he jumped on the officer's back.*

Q. Did he state he jumped on the officer's back?

A. Yes.

Q. Do you remember those were his exact words?

A. Yes."

On cross-examination, the rebuttal witness was asked the following pertinent questions:

"Q. Are you doing that from memory of what happened on March 16th when you talked to him?

A. Yes.

Q. Doing it from memory of that, or did you read a statement before you came up today?

A. No, I didn't read anything. I didn't even know I was going to be here until about five minutes ago.

\* \* \* \* \* \*

Q. Did you talk to him later?

A. Yes, I checked on him again later in the morning. That is when we had this conversation I referred to.

Q. You wrote down a statement, didn't you, about what happened down there?

A. Yes, sir.

Q. In your statement didn't you say 'So I got into it' and now you are saying that he said he jumped on the officer's back?

A. I don't recall exactly what I wrote down, no. I have not seen the statement since the time I wrote it down.

Q. I am going to show you a statement. Is that your signature?

A. Yes, it is.

Q. Did you write this down with regard to Lee Roy Patton?

A. I did.

Q. I direct your attention down where that says, 'So I got into it too.' Okay?

A. Yes, sir.

Q. The question is simple, did he say, 'So I got into it' or did he say he jumped on the officer's back?

A. As I recall to the best of my knowledge, he said he jumped on the officer's back.

Q. You are not absolutely sure he said that?

A. I said to the best of my knowledge, yes."

Did the cross-examination of appellant meet the criteria of the authority above? Appellant was asked if he had a conversation with Officer Terry Boyer. He answered yes. That satisfied the requirement of the person. He was asked if such conversation took place the morning of the incident and if the conversation took place at the police station. That satisfied the requirement of time and place. He was asked if the conversation entailed appellant's accounting to Officer Boyer of what had happened. Appellant testified he told Officer Boyer the same things to which he testified upon trial.

It must be pointed out that appellant denied telling Officer Boyer that he (appellant) *could not let that happen, that is, his son being stricken by police officer.* Appellant further denied that he "*got into it too*".

The specific question and answer on this point is as follows:

"A. I told him I saw an officer hitting him.

Q. Did you also tell him that you couldn't let that happen, so you got into it too?

A. I did not. That is being added to that statement.

Q. You didn't say that at all?

A. No, I did not."

Thus, the record reflects the appellant was asked if he made a specific statement to the rebuttal witness. The appellant denied making such a statement. The requirement, as prescribed in *State v. Kelly, supra,* was thus met.

The record also reveals that a proper foundation was laid for purposes of impeaching appellant's testimony upon a prior inconsistent statement via the rebuttal witness.

In view of this conclusion as supported by the evidence, no manifest injustice or miscarriage of justice arose in the admission of this evidence, which brings this testimony within the plain error rule.

Point two is ruled against appellant.

The final point presented by appellant is that it was plain error for the trial court to have permitted the prosecutor to argue that appellant was not a believable person and that the state's witnesses were systematically lying. Appellant contends such argument was not supported by the evidence and was aimed at the denigrating the character of the appellant.

The court believes the appellant intended (although neither his brief nor his argument within the brief clarifies the point) to say that the prosecutor, by negative inference, alleged the appellant accused the state's witnesses of systematic lying.

The record reveals the following remarks by the prosecutor on this point:

"We had three police officers sit on the witness stand, and they resent the inference that they systematically lied as well as two other witnesses systematilying [sic]."

Appellant's point of error intimates the prosecutor argued that the state's witnesses systematically lied. Such literal reading of the point suggests the final argument by the state was derogatory of the state's own witnesses. The above-referred-to portion of the record is referred to for purposes of clarifying this point.

In addition to the above-referred-to remark, which certainly unto itself was not improper, appellant contends it was plain error for the court to have permitted the following portion of final argument by the prosecutor.

"Mr. Patton I will submit to you lied to you on the witness stand. He is not a credible witness. He indicated to you that he never at any time jumped on anyone's back. However, you saw the inconsistency in the prior statement that he made.

MR. WARREN: I object to that as not being the testimony. It wasn't an inconsistent statement. That was not the testimony at the time.

THE COURT: The objection is sustained.

I will have you know that he is not a believable person."

Careful scrutiny of the record reveals the prosecutor's statement, the interposing of an objection, the sustaining of the objection and finalization of the prosecutor's remarks. This often occurs in the trial of a case where the comments by counsel, the formal objection, the ruling of the court and the completion of the original statement are virtually simultaneously uttered and entered upon the record in the sequence observed by the reporter.

In this case, the objection was sustained and no further action was taken, nor further request made by appellant on this point.

Appellant contends the remarks by the prosecutor were denigrating as to the character of appellant. The term *denigrate* has been defined as follows: "To belittle or calumniate the character or reputation of; defame." [2]

Argument of counsel has been considered by our courts on several occasions. It has been held that the prosecutor occupies a quasi-judicial position, and is charged with the duty to thoroughly present the state's case and to afford a defendant a fair and impartial trial, see *State v. Stockbridge*, 549 S.W.2d 648 (Mo.App.1977), citing *State v. Tiedt*, 357 Mo. 115, 206 S.W.2d 524 (banc 1947); *State v. Allen*, 363 Mo. 467, 251 S.W.2d 659 (1952); *State v. Selle*, 367 S.W.2d 522 (Mo.1963); *State v. Heinrich*, 492 S.W.2d 109 (Mo.App.1973) and *State v. Hicks*, 535 S.W.2d 308 (Mo.App.1976).

The court in *State v. Stockbridge, supra*, pointed out that the prosecution should not refer to the accused as a criminal of any kind. The court (in that case) concluded that repeated reference to the accused as a "professional", "pro", "professional car thief" and as being engaged in "stealing cars" exceeded the boundary of propriety of final argument.

■ The question turns upon the facts and circumstances of each case, and it must be decided whether the argument of a particular case constitutes an arousal of personal hostility toward the accused by the jurors, see *State v. Stockbridge, supra.*

■ Appellant pleads the prosecutor's remarks and the action by the trial court constituted plain error. This court is unquestionably authorized to review any trial upon the basis of plain error and to apply the rule declaring plain error if upon the record, the facts so warrant such action.[3]

In the instant case, the prosecutor made a statement, submitting appellant lied, and referred to alleged inconsistent statements of the appellant. Timely objection was made upon the premise that such a conclusion was not supported by the evidence. The court sustained the objection. No further relief, including an instruction that the jury be advised to disregard the remark, was requested by appellant. In addition, the alleged "plain error" of the prosecutor's remarks concerning appellant as being a nonbelievable person, as had been pointed out, was the conclusion or completion of the prosecutor's initial remarks.

This court is called upon to look at the entirety of the final argument to see how such argument impacted upon the appellant's right to a fair and impartial trial. Close scrutiny of the argument in this case shows a remark was made, timely objection entered, the objection sustained, and the matter disposed of by the trial court. There is nothing which brings this case within the rule of *State v. Tiedt* or *State v. Stockbridge, supra*, and by reason thereof, appellant's final point is ruled against him.

For the foregoing reasons, the judgment herein is affirmed.

All concur.

2. The American Heritage Dictionary of the English Language, 352 (1978).

3. Rule 27.20(c).