STATE of Missouri, Plaintiff-Respondent,

v.

William O'Neal GULLY, Defendant-Appellant.

No. 14439.

Missouri Court of Appeals, Southern District, Division One.

Sept. 19, 1986.

William L. Webster, Atty. Gen., John Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Michael Lyons, Springfield, for defendant-appellant.

JAMES A. PUDLOWSKI, Special Judge.

Appellant, William O'Neal Gully, was convicted by a jury of possessing a screwdriver for use as a burglar's tool in violation of § 569.180.[1] The same jury acquitted appellant on the second charge which was attempted stealing in violation of § 564.011. The Circuit Court of Greene County entered judgment on the jury's verdict and sentenced appellant to five years in the custody of the Missouri Department of Corrections to run consecutively with three concurrent one year sentences for offenses for which appellant was on probation at the time of this offense.

This appeal involves two questions. First, whether the evidence was sufficient to establish that appellant intended to use the screwdriver to break into an inhabitable structure. Second, whether the prosecutor made a reference to the fact that appellant was wearing a jail uniform which prejudiced the jury to the extent that the trial court erred in failing to declare a mistrial sua sponte. We affirm.

The evidence adduced at trial indicated that at approximately 8:00 a.m. on October 29, 1984, Anita Crowder drove her recently purchased 1984 Dodge Ram Maxi-Van to her pottery shop at 404–406 South Avenue in Springfield and parked in the alley behind the business. She locked the van and went inside. The van contained a bed, an icebox, four chairs and a closet. Mrs. Crowder also testified that she believed that there was a television in the van at that time.

About 9:00 a.m., Roger Long, a carpenter who was doing renovation work at a building overlooking the alley, noticed the appellant in the alley near the van. He then saw appellant approach the van's passenger side, pull something from his right hip pocket, and begin to use the object to pry the wing vent window. Long then went to a telephone, called the police, told them what he had seen, and described appellant. After getting the description, the dispatcher requested Long to see if the suspect was still there. Long returned to the part of the building overlooking the alley and ascertained that appellant was still in the alley. Long returned to the phone and reported this to the dispatcher. A few more minutes passed and the dispatcher again asked Long to check the alley. This time, Long reported that a blue car was parked next to the van and that appellant was gone.

Officer Dana Carrington had been dispatched to the alley and he arrived shortly after appellant left. He found the wing vent on the passenger side of the van ajar and there was rust and scrape marks around the vent. He spoke with Long. He then called into his dispatcher relaying the same description that Long had given earlier.

Police Corporal William Buron then arrived at the alley, spoke with Officer Carrington, and then began walking south toward Pershing Street. At the end of the alley, he saw appellant walking east on Pershing. Officer Buron testified that because appellant matched the description given by Long, he stopped him and patted him down for weapons. Appellant did not have a weapon on him at that time, but the pat down did uncover a rusty screwdriver in appellant's right rear pocket. Appellant was then returned to the alley where he was identified by Long.

At trial, appellant's defense was that he had been concerned about how his hair looked and had only approached the Crowder van to use the passenger window as a mirror. He testified that the object he had

---

1. Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S.

removed from his rear pocket was a comb rather than the screwdriver.

Section 569.180.1 defines the crime of possession of burglar's tools as follows:

A person commits the crime of possession of burglar's tools if he possesses any tool, instrument or other article adapted, designed or commonly used for committing or facilitating offenses involving forcible entry into premises, with a purpose to use or knowledge that some person has the purpose of using the same in making an unlawful forcible entry into a building or inhabitable structure or a room thereof.

Thus, the state was required to demonstrate not only that appellant possessed a burglar tool, the screwdriver, for use in a forcible entry, but also that the place which he planned to forcibly enter was a building or inhabitable structure. Section 569.-010(2) states:

'Inhabitable structure' includes a ship, trailer, sleeping car, airplane, or other vehicle or structure:

(a) Where any person lives or carries on business or other calling; or

(b) Where people assemble for purposes of business, government, education, religion, entertainment or public transportation; or

(c) Which is used for overnight accommodation of persons. Any such vehicle or structure is 'inhabitable' regardless of whether a person is actually present; ....

This definition was given to the jury in Instruction Number 9.

Anita Crowder testified that she and her husband had purchased the van for use as overnight accommodation when they traveled. She also stated that she had used the vehicle for overnight accommodation on various occasions. However, she was not sure that she or anyone else had slept in the van prior to October 29, 1984. Appellant therefore argues that the Crowder van was not one which, as of October 29, 1984, could be said to be a vehicle "which is used for overnight accommodation of persons." We disagree.

The only case that appellant cites for his point is *State v. Scilagyi*, 579 S.W.2d 814 (Mo.App.1979), which we find inapposite. The *Scilagyi* court concluded that the old burglary statutes, §§ 560.040 through 560.-115, which required that the object of the forcible entry be a "building" or "dwelling house," did not apply if the forcible entry or contemplated forcible entry was to a semitrailer which was not equipped for water or sewer hookup. The court's holding was simply that a mobile semitrailer was not a "building," or "dwelling house." We have no argument with that conclusion. However, the legislature, when it enacted the new burglary related statutes, found in § 569, added the term "inhabitable structure" and its above-cited definition with the specific intent to broaden the objects of forcible entry which would trigger the applicability of the statutes.

■ The question before this court, one which has not previously been dealt with, is whether the term "inhabitable structure" in § 569.180, as defined by § 569.010(2)(c), includes a vehicle of the type commonly used for overnight accommodation, and which was purchased for that purpose, even if the date of the alleged offense precedes the vehicle having actually been slept in. We hold that it does. While criminal statutes are to be strictly construed, they are not to be so narrowly construed as to be ludicrous or as to go against the intent of the legislature. Section 569.010(2)(c) clearly states that the applicability of that section is not dependent on whether anyone was using the vehicle for overnight accommodation at the time of the alleged offense. In fact the inhabitability of the structure is specifically declared to be unaffected by the presence or absence of a person in the structure.

Even when the statute being interpreted is penal in nature, "the primary principle and the primary rule of [statutory] construction is to ascertain the intention of the General Assembly from the words used in the statute in order to effectuate the true intent of the legislature." *State ex rel.*

*Peach v. Bloom*, 576 S.W.2d 744, 746 (Mo. banc 1979). It would seem illogical to hold that while the legislature did not intend that the applicability of § 569 depend on the presence or absence of an occupant of the structure, it did intend the section's applicability to turn on the seemingly much less relevant factor of whether or not the structure has actually been slept in. Statutes are not interpreted in an illogical or forced way where a logical interpretation is available. *See State v. Ballard*, 294 S.W.2d 666, 669 (Mo.App.1956).

Thus, we hold § 569.010(2)(c) includes any vehicle or structure of the type which is commonly used for overnight accommodation, whether or not the vehicle has, as of the date of the alleged offense, been so used. Appellant's first point is ruled against him.

Appellant's second contention is that certain remarks by the prosecutor during the second part of his closing argument were so prejudicial that a mistrial should have been declared. The following are the remarks complained of:

Now, the defense is that the defendant was going to comb his hair in the window. Does this look like a man who is going to comb his hair before he goes to a pool—a place to play pool and drink beer? Is that the kind of man that's in the courtroom today? Is he going to be that concerned about his appearance in a pool hall *when he comes to court dressed like this?*

Emphasis added. References to prison attire, as the state admits in its brief, are improper because of their tendency to prejudice the jury by creating the impression that the defendant is guilty because he is already in jail. *See, Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).

In the trial of a criminal case the [prosecutor] occupies a quasi judicial position. While it is his duty vigorously ... to prosecute in behalf of the State. Yet he is also chargeable with the duty to see that the defendant gets a fair trial and he may not knowingly prejudice the right of the defendant to a fair trial by injecting into the case prejudicial and incompetent matters.

*State v. Allen*, 363 Mo. 467, 251 S.W.2d 659, 662 (1952). *See also, State v. Stockbridge*, 549 S.W.2d 648, 651 (Mo.App.1977), and *State v. Heinrich*, 492 S.W.2d 109, 114 (Mo.App.1973). The general rule, however, is that the trial court has broad discretion in determining both what is and is not proper in closing argument and what type of relief should be granted for improper argument. *State v. Wood*, 596 S.W.2d 394, 403 (Mo. banc 1980). "In addition, it is proper for the prosecutor to retaliate to an issue raised by a defendant's argument even if the prosecutor's comment would otherwise be improper." *Id.* Here, the prosecutor's remarks were clearly made to rebut the defense argument that appellant only approached the van to examine his hair.

A prosecutor's argument can be so highly improper, so vicious and so prejudicial that the trial court would abuse its discretion by not granting a mistrial on its own motion. *State v. Rhoden*, 363 Mo. 1247, 243 S.W.2d 75, 78 (1951). However, such an abuse of discretion will only be found by an appellate court where the argument is "plainly unwarranted and clearly injurious." *State v. Reynolds*, 608 S.W.2d 422, 426 (Mo.1980). In the present case, it is not clear either that the prosecutor's argument was unwarranted or that it was injurious.

■ The jury had already heard appellant, in response to a question by his own counsel, state that he was living in the Greene County jail. The jurors were, therefore, already aware that appellant was incarcerated at the time of the trial, and they were unlikely to be prejudiced by the state's remarks. Thus, there was certainly no clear abuse of discretion in the trial court's failure to grant a mistrial based on the above-quoted comments by the prosecutor.

It should also be noted that appellant's contention is that the trial court should have acted sua sponte. After appellant's

objection to the remarks was sustained, his counsel failed to request a mistrial or any other form of relief. If an appellant fails to ask for curative relief, once his objection has been sustained, he has no cause to complain of the trial court's failure to take action which was not requested. *State v. Peck,* 429 S.W.2d 247, 251 (Mo.1968); *State v. Miller,* 653 S.W.2d 222, 226 (Mo.App. 1983); *State v. Farris,* 649 S.W.2d 554, 555 (Mo.App.1983). Appellant's second point is ruled against him.

The judgment is affirmed.

CROW, C.J., and GREENE, P.J., concur.