**STATE of Missouri, Respondent,**

v.

**Linda J. LINDER, Appellant.**

**No. WD 31676.**

Missouri Court of Appeals,
Western District.

March 2, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1981.

As Modified On Court's Own
Motion April 16, 1981.

Application to Transfer Denied
May 11, 1981.

Philip F. Cardarella & Katheryn Shields, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Darrell Panethiere, Asst. Atty. Gen., Kansas City, for respondent.

Before MANFORD, P. J., WASSERSTROM, C. J., and NUGENT, J.

MANFORD, Presiding Judge.

This is a direct appeal from a jury conviction for promoting prostitution of one under the age of 16 years. The jury assessed punishment at eight years in the Department of Corrections. The judgment is affirmed.

Five points of error are presented on appeal, which in summary allege the trial court erred in (1) overruling appellant's motion for directed verdict because the evidence was insufficient to support a jury finding that appellant caused or ordered a person to commit or engage in an act of prostitution; (2) improperly instructing the jury regarding the elements of § 567.050 by the use of MAI–CR 21.06 because said instruction was not applicable to the facts of the case and by the refusal of offered MAI–CR 33.01; (3) refusing to direct a verdict that the evidence was insufficient to support a jury finding that any act of prostitution occurred; (4) in allowing impermissible argument by the prosecutor and (5) allowing the introduction of unrelated crimes.

Appellant had a 14-year-old daughter. On January 30 at about 9:00 p. m., this girl had retired to her bed, at which time her stepfather joined her (in bed). At a later hour, appellant observed the two in bed, an argument ensued and appellant left the residence. The stepfather got back in bed with the girl. Later, appellant phoned the residence and when her daughter answered the phone, appellant asked the girl if she was dressed. The daughter handed the phone to her stepfather, got up and dressed. The stepfather then gave the girl appellant's coat and the two of them left the residence. The stepfather drove the girl to the Howard Johnson Motel. The girl was told to go to Room 140, knock on the door and ask for the "man from San Antone". Although the girl had some difficulty locating Room 140, she was soon assisted by her stepfather who helped her locate the room. She knocked on the door and was admitted. The stepfather then left the motel without approaching or entering Room 140.

Earlier in the evening, after the argument with her husband, appellant went to the Howard Johnson Motel, whereupon she had drinks with two of the state's witnesses in the motel's cocktail lounge. Appellant asked those witnesses if they wanted some company and "offered to call her sister". She then accompanied one of the witnesses to his room, whereupon they had sexual relations. At this point, appellant and this one witness were joined by the state's second witness. Appellant then proceeded to have sexual relations with the second witness.

After the sexual encounter with the second witness, appellant made a phone call to her daughter from the motel room. The girl later arrived and had sexual relations with both of the state's witnesses. Appellant and her daughter then dressed. The following colloquy relates what took place at this point:

"Q. Okay, and did you overhear any conversations or see anything at that time?

A. Yes, my Mother asked him for the hundred dollars.

Q. Okay, and did you see the man give her some money?

A. Yes."

The daughter went to school the next day, called her grandmother and related the events of the night before.

The two male participants verified that they met appellant in the cocktail lounge and that they both ended up in Room 140 and had sexual relations with appellant and her daughter. They both testified that appellant made a phone call from the motel room. One of these men verified that he paid the $100 by paying appellant with five $20 bills.

Appellant offered no defense. The evidence closed. The jury was instructed and after deliberation, found appellant guilty and assessed punishment. This appeal followed.

As her first point of error, appellant argues that she was entitled to a directed

verdict because the evidence failed to support a finding that appellant caused or ordered a person to commit or engage in an act of prostitution. Appellant argues that the evidence fails to show beyond a reasonable doubt that she was guilty of violating § 567.050, RSMo 1978. That statute reads as follows:

"567.050. *Promoting prostitution in the first degree* [1]

1. A person commits the crime of promoting prostitution in the first degree if he knowingly

(1) Promotes prostitution by compelling a person to enter into, engage in, or remain in prostitution; or

(2) Promotes prostitution of a person less than sixteen years old.

2. The term "*compelling*" includes

(1) The use of forcible compulsion;

(2) The use of a drug or intoxicating substance to render a person incapable of controlling his conduct or appreciating its nature;

(3) Withholding or threatening to withhold dangerous drugs or a narcotic from a drug dependent person.

3. Promoting prostitution in the first degree is a class B felony."

Reducing the statute to its simplest form and without conceding that the evidence supports a finding that an act of prostitution occurred, appellant argues that under the statute, a person cannot promote prostitution if that person is acting as a prostitute. Appellant refers this court to § 567.-010, RSMo 1978. The section pertinent reads as follows:

"(1) 'Promoting prostitution', a person 'promotes prostitution' if, acting other than as a prostitute or a patron of a prostitute, he knowingly

(a) Causes or aids a person to commit or engage in prostitution; or . . .

(c) Provides persons or premises for prostitution purposes; or . . .

(f) Engages in any conduct designed to institute, aid or facilitate an act or enterprise of prostitution . . ."

In her argument, appellant references (1)(a) of § 567.010 and from that, urges this court to adopt a hard and fast rule declaring that one who is a prostitute could not be guilty of promoting prostitution under § 567.050. Respondent argues that §§ 567.-050 and 567.010 as interrelated, "simply mean[s] that a prostitute may not be charged with promoting the prostitution of herself."

This is a case of first impression in our state and as a result thereof, there is no Missouri precedent to guide this court. Appellant directs the court's attention to decisions from our sister state of New York. Appellant argues that our statute is patterned after the New York statute, see New York Penal Law, § 230.00, et seq. The two decisions from New York are *People v. Trinci*, 7 A.D.2d 885, 181 N.Y.S.2d 256 (1959), cert. denied 362 U.S. 914, 80 S.Ct. 665, 4 L.Ed.2d 621 (1960) and *People v. Jelke*, 1 N.Y.2d 321, 152 N.Y.S.2d 479, 135 N.E.2d 213 (1956). These New York cases dealt with New York Penal Statute, § 2460, which was repealed in 1978 and replaced by § 230, et seq. The revision incorporated much of the previous language of § 2460. In neither of the foregoing New York decisions did the courts conclude, as appellant contends, that a prostitute could not be found guilty of promoting prostitution. The *Trinci* case turned upon the insufficiency of the evidence to support a conviction for placing a female in the charge or custody of another for immoral purposes, which is a prescribed, prohibited act within the New York statute. The *Jelke* case turned upon the court's interpretation of the New York statute and stated that the main purpose of the statute (which prohibits attempts to entice a woman to live a life of prostitution) is "to get the tycoons of organized vice, . . ." *Jelke*, 152 N.Y.S.2d at 483, 135 N.E.2d at 216. It is clear, both

1. Effective January 1, 1979.

from the reading of the New York statute and the reading of *Trinci* and *Jelke* that none is controlling of the instant case. This court also finds the case of *People v. Gallucci*, 62 A.D.2d 1129, 404 N.Y.S.2d 768 (1978), which involved insufficiency of the evidence to convict an accused under the New York Statute for promoting prostitution arising from a stag party, is not controlling.

In attempting to determine the legislative intent of §§ 567.010 and 567.050, the court has considered and found the comments to those sections to be persuasive. It appears from the reading of such comments that well-defined rules of interpretation emerge. Section 567.010 has been designed to eliminate the need for separate statutes covering the procuring of, pimping of, transporting of, keeping a house for prostitution or leasing of such facilities for, or profiting from the earnings of *prostitutes*. This same section includes the language, "any other conduct designed to institute, aid or facilitate an *act* or enterprise of prostitution..."

■ Thus, it can be concluded, both from the reading of § 567.010 and the accompanying comments that our state statute is designed to encompass the New York statute. It cannot be said, as appellant contends, that because she may have engaged in prostitution, she is insulated from the statute charging her with promotion. The legislative intent expressed within § 567.-010(1) simply excludes the prosecution of a prostitute or a patron for promoting prostitution in a single act of prostitution involving only the prostitute and the patron. Neither the prostitute nor the patron can be charged with the promotion of prostitution in a case involving only an act of prostitution as between them. Rather, the promotion of prostitution under § 567.050 involves a third party.

■ What appellant overlooks are the events which took place in the instant case and the fact that, in line with § 567.050, the acts of appellant were inclusive of prostitu-

tion and the promotion of prostitution. The fact that appellant had previously engaged in prostitution, a fact not conceded by appellant, does not, by construction of the applicable statutes, preclude prosecution for the promoting of prostitution under § 567.-050. In other words, a prostitute, if warranted by particular facts and circumstances, can, by the commission of certain acts, also be charged for the promotion of prostitution. The mere fact that the accused is a prostitute does not exclude that person from § 567.050.

■ This point turns upon the determination of whether the evidence was sufficient to support a finding that appellant was guilty of promoting the prostitution of her 14-year-old daughter.

The evidence shows that appellant had come into the company of the two male participants. She had asked them if they wanted company. At this same point, appellant "offered to call her sister". Appellant proceeded to the motel room with one male participant and engaged in sexual activities with him. These two persons were then joined by the second male participant with whom appellant also engaged in sexual activities. To this point, only one criminal act (prostitution) had been committed by appellant. It is recognized by this court that appellant challenges the showing that any criminal act of prostitution occurred, but the specifics of that issue are disposed of later in this opinion.

At this juncture, appellant then called her daughter. The evidence, without question, establishes that the clear purpose of that call was to direct appellant's daughter to travel to the motel, to enter the room and to commit acts of prostitution. The daughter was informed of the room number and the code word to be used to gain entry to the motel room. The daughter committed acts of prostitution with both male participants.

In sum, the evidence clearly shows that appellant committed the act of prostitution,

and then by her subsequent actions, took up the role of procurer to accomplish the acts of prostitution by her daughter with the two male participants. The fact that appellant had committed prostitution prior to the actions involving her daughter and that she committed prostitution after the daughter's arrival do not take appellant outside the statute.

The evidence sufficiently establishes that appellant committed specific acts, i. e., telephoning, (separate and distinct from her own acts of prostitution) which were for the express purpose of promoting the prostitution of her daughter. Such conduct is the very conduct contemplated within § 567.-050. No conflict arises with that portion of § 567.010, which states that "a person *'promotes prostitution' if, acting other than as a prostitute* or a patron of a prostitute, he knowingly (a) *Causes or aids a person to commit or engage in prostitution . . ."* (emphasis added).

It is obvious that at the time appellant undertook to call and make arrangements for her daughter to come to the motel room, she (appellant) was causing and aiding another person (her daughter) to commit or engage in prostitution. This act is contemplated within § 567.050. The evidence on the issue called for a factual determination· by the trier of fact. Appellant was not entitled to a directed verdict. It is also clear that the evidence was sufficient to support the finding of the jury. Point (1) is found to be without merit and is ruled against appellant.

■ Appellant's second point challenges the court's giving of instruction no. 5. This instruction, set forth below, is in accordance with MAI–CR 21.06.

### "INSTRUCTION NO. 5

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about January 31, 1979 in the County of Clay, State of Missouri, S⸻ was less then sixteen years old, and

Second, that at that time and place the defendant caused S⸻ to engage in prostitution, and

Third, that in engaging in the conduct submitted in this instruction the defendant acted knowingly,

then you will find the defendant guilty of promoting prostitution in the first degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

If you do find the defendant guilty of promoting prostitution in the first degree, you will assess and declare the punishment at imprisonment for a term of years fixed by you but not less than five or more than fifteen years." (Submitted by State, MAI–CR 21.06)

Appellant further contends that the court erred in refusing to give the following instructions:

### "INSTRUCTION NO. J

If you find and believe from the evidence that the Defendant, Linda J. Linder, was engaged in an act of prostitution at the time of the offense charged, then you must find her Not Guilty of Promoting Prostitution." (MAI–CR2d 3.04, Requested by Defendant)

### "INSTRUCTION NO. I

PROMOTING PROSTITUTION:

A person promotes prostitution if, acting other than a prostitute or a patron of a prostitute, he knowingly

(a) Causes or aids a person to commit or engage in prostitution, or

(b) Procures or solicits patrons for prostitution, or

(c) Provides persons or premises for prostitution purposes, or

(d) Operates or assists in the operation of a house of prostitution or a prostitution enterprise, or

(e) Accepts or receives or agrees to accept or receive something of value pursuant to an agreement or understanding with any person whereby he participates or is to participate in proceeds of prostitution activity, or

(f) Engages in any conduct designed to institute, aid or facilitate an act or enterprise of prostitution."

(MAI–CR2d 33.01, submitted by Defendant)

The entirety of appellant's argument on this point rests upon the allegation that the given instruction no. 5 did not provide for the defense that appellant was "acting as a prostitute". Appellant's argument fails for two reasons. First, appellant's argument is premised upon her misconception of the applicable statute as discussed under point (1). Second, the only evidence on the pertinent acts committed by appellant were those referenced above. There was no evidence that at the time appellant aided and caused her daughter to engage in prostitution that she (appellant) was engaged in an act of prostitution.

Instruction no. 5 is in conformity with MAI–CR 21.06 and was the instruction applicable to the facts in evidence in the instant case. It was not error to give instruction no. 5. Conversely, it was not error to refuse to give instructions no. J and no. I as offered by appellant because neither applied to the facts in evidence in the instant case. Point (2) is found to be without merit and is ruled against appellant.

In point (3), appellant contends that the trial court erred in overruling her motion for acquittal because the evidence was insufficient to support a finding that an act of prostitution had occurred. It is neither necessary nor convenient to restate the entirety of the facts in this case and it suffices to reference only those applicable to the charged error under this point.

Appellant correctly argues that prostitution is committed only when a person engages or agrees to engage in sexual conduct with another in return for something of value to be received by the person or by a third person. Appellant refers this court to the legislative comments under § 567.010, which include in part the language, "However, the offer or agreement to engage in sexual conduct must be in return for 'something of value' (defined in subsection [5])." (see 40A V.A.M.S. p. 793 for above legislative comment concerning § 567.010, RSMo 1978). Although no exception can be taken to the foregoing interpretive declarations of the law, appellant argues that the evidence only shows that she asked the two male participants if they would like some company and that there was no mention of money until after the acts of intercourse. Appellant contends that the payment of the $100 was nothing more than a gratuity and hence, there was no contractual arrangement to commit an act of prostitution.

Appellant offered no evidence to dispute a contractual agreement to commit prostitution, nor to support her allegation that the payment of the $100 was a mere gratuity. Appellant's contention that there was no evidence on this point is not supported by the record as viewed by this court.

The evidence shows appellant engaged the two male participants in conversation which included the inquiry as to whether they wanted any company. Included within that conversation was the offer to call her sister. Appellant went to the motel room and engaged in sexual activities with both male participants. These three were joined by appellant's daughter. After the sexual activity had been completed and appellant and her daughter were preparing to leave, the daughter heard her mother ask for money and stated at trial, "Yes, my mother asked him for the hundred dollars." After appellant asked for the money, one of the male participants paid appellant the sum of $100 by way of five $20 bills. This evidence references a specific sum, i. e.,

"the hundred dollars". There is no evidence that either of the male participants argued with appellant, nor was any other gift, payment or gratuity discussed. It does relate to a specific sum from which under the attending circumstances the trier of fact could properly infer that at a prior point in time, appellant had quoted a price, that price being $100.

In addition, it is not necessary that illicit promises or arguments to engage in unlawful sexual activities be in any form of expression or words, but such illicit promises or agreements may be inferred from all the attending circumstances. *City of St. Louis v. Long*, 395 S.W.2d 481 (Mo.App. 1965). See also *Kansas City v. Martin*, 369 S.W.2d 602 (Mo.App.1963) and *State v. Connor*, 585 S.W.2d 294 (Mo.App.1979).

It cannot be said that under the facts and circumstances of the instant case the evidence herein was not substantial, thus mandating a verdict of acquittal to appellant's favor. The evidence was uncontroverted on this point and was substantial to permit the determination of the point by the trier of fact. Point (3) is found to be without merit and is ruled against appellant.

In point (4), appellant turns her attack upon the trial court by charging that the trial court erred in allowing impermissible argument by the prosecutor over appellant's objection.

Appellant argues that the following excerpt from the prosecutor's closing argument so inflamed the passions and prejudices of the jury that it violated her Sixth and Fourteenth Amendment rights to a fair trial as guaranteed to her by the Constitution of the United States. The pertinent portion of that argument is: "If you resolve in your mind that the woman is guilty of this crime because it is a terrible crime to do that to a kid, and when you are thinking about how much time Linda Linder should have to do in the Department of Corrections, you think about the time and the

length of time that S——— is going to carry these scars because of her actions."

In support of her attack upon the foregoing statement by the prosecutor, appellant refers this court to *Beck v. United States*, 22 F.2d 107 (1929) (sic), *State v. Swenson*, 551 S.W.2d 917 (Mo.App.1977); *State v. Stockbridge*, 549 S.W.2d 648 (Mo.App.1977); *State v. Groves*, 295 S.W.2d 169 (Mo.1956) and the American Bar Association Standard 5.8.

The case of *Beck v. United States, supra*, as cited, is error. The citation of 22 F.2d 107 reveals the 1927 case of *Lew Shee v. Nagle* and is a federal immigration case. There is a case, *Beck v. United States*, 33 F.2d 107 (8th Cir. 1929) which addresses the question of prejudicial argument wherein the general rule of arousal of passion and prejudice is prohibited. In that case, the repeated argument referring to the robbery of widows (after objection thereto had been sustained) was held to be error. *Beck*, 33 F.2d 107, is further distinguished upon a failure of the evidence to support an inference raised in final argument. *Beck* is found neither applicable nor controlling herein.

In *Swenson*, a case dealing with the charges of kidnapping and sodomy wherein the convictions were affirmed, the court held that the prosecutor has wide latitude in his argument and may argue all the evidence and any reasonable inferences therefrom. Such argument must insure a fair trial and should not be designed to inflame the passions or prejudices of a jury against a defendant. The court held that there must be a showing the trial court abused its discretion in its control over closing arguments and that the use of the following language did not violate the limitations placed upon prosecutorial comment. That language is as follows: "sordid", the matter was "distasteful", the boys had to "relive the experiences countless times testifying", "terrors", "horror" and the boys were "treated worse than animals". *Swenson* does not assist appellant.

*Stockbridge* was a case involving conviction for felonious assault upon a police officer wherein the court concluded that the "cumulative effect" of the prosecutor's reference to the accused as a "professional", a "pro", a "professional car thief" and as engaged in "stealing cars", branded the defendant with being a criminal of that "class or kind" when in fact he was standing trial for felonious assault. *Stockbridge* is distinguishable from the instant case because the statement under attack includes no repeated assignment of title or named reference to appellant. Further, as can be seen and as contrasted with *Stockbridge*, the comments in the instant case relate exclusively to the charges pending and the parties directly involved. *Stockbridge* does not aid appellant. For a discussion of *Stockbridge*, and to see that while not condoned, no error was found by the prosecutor calling the accused a turkey, see *State v. Merritt*, 591 S.W.2d 107 (Mo.App.1979).

Appellant argues that the foregoing statement was made in the context of an emotionally charged trial involving a young female and that a sympathetic reaction to the young female would be a natural reaction for jurors. Appellant further suggests that the foregoing statement amounted to an exploitation of the existing conditions and appellant refers this court to *Groves* as controlling. *Groves*, a case wherein the accused was charged with assault with intent to rape, points out (1) that a prosecutor may not express his private opinion or knowledge concerning the defendant's guilt and (2) that a prosecutor is prohibited from implanting in the minds of jurors prejudicially incompetent matters that will inflame them. *Groves* is found not to be controlling.

This court, in weighing the referenced statement against the American Bar Association's Standard 5.8, fails to reach the same conclusion suggested by appellant. That standard mandates that a prosecutor should not inflame a jury. It further instructs him to refrain from argument which will divert a jury from its duty to decide a case upon the evidence by injecting issues broader than the guilt or innocence of the accused under the controlling law or by making predictions of the consequences of the jury's verdict.

While pointing out that the foregoing is not binding on this court, this court is also mindful of the intended high purpose of the A.B.A. standard. When that standard is applied to the statement questioned herein, it cannot be said that that standard has been violated.

The disposition of this point falls more closely within *State v. Thompson*, 531 S.W.2d 63, 66 (Mo.App.1975), a case where a sodomy conviction was affirmed, wherein the court held the following comments were within the limits set by the discretion afforded the trial court. In *Thompson*, the prosecutor commented, " '. . . I would submit to you that this is a crime that has very definitely left injury, left damage and left scars on the mind and the psychic of a fourteen year old child. So when you consider the amount of punishment, take into consideration how long R— will bear these scars how long she will have to live with the nightmare events of July 17 or 18 here in Clay County, Missouri, and how that that (sic) will affect her life.' "

██ This court concurs in the ruling of *Thompson* and it is submitted that the statement under attack herein falls far short of that permitted in *Thompson*. The trial court herein is allowed wide discretion in the matter of final argument and that discretion will not be disturbed unless there is a showing of an abuse thereof. *State v. Jewell*, 473 S.W.2d 734 (Mo.1971). Counsel, in closing argument, is permitted to comment on matters in evidence and may draw inferences from such evidence. *State v. Treadway*, 558 S.W.2d 646 (Mo.banc 1977). There is no showing upon this record that the prosecutor's comments inflamed the passions and prejudices of the jury or that these comments even reached the limit permitted in *Thompson*. Point (4) is found to be without merit and is ruled against appellant.

As to her final point (5), appellant argues that the trial court erred in permitting the introduction of evidence concerning unrelated crimes which denied appellant her fundamental right to a fair trial. Appellant contends that the evidence showing the 14-year-old daughter in bed with her stepfather was evidence of another criminal act which neither proved nor disproved whether the daughter had sexual relations at a motel with two men. Appellant contends this evidence was so inflammatory that it impaired appellant's right to a fair trial, and the admission of such evidence was reversible error. The evidence on this point does not show that the daughter and the stepfather engaged in sexual relations.

Respondent confronts this point by arguing that no reversible error occurred when testimony was secured from the daughter that she was in bed with her stepfather prior to an argument between appellant and the stepfather, and again at the time appellant called the daughter to come to the motel. It is further argued that no reversible error resulted from the testimony of the daughter concerning whether the daughter had gone to motels with her stepfather on other occasions since that testimony arose in response to the alleged misleading cross-examination of the daughter by appellant. Respondent further argues that such testimony was secured to illustrate appellant's conduct immediately before, during and after the offense in order to permit the jury to infer appellant's conduct and motive. Respondent argues that the statements, exclamations, acts or conduct of third persons are admissible where such are closely connected with the crime.

The 14-year-old girl testified she went to bed at around 9:00 p. m. She was asked what then happened and gave no response. She was then asked if her stepfather came in, to which she answered "yes". She was asked what occurred when he came into the room. At this juncture, a conference was held at the bench, whereupon appellant's counsel renewed appellant's motion in limine which moved the court to prohibit the prosecution from eliciting any evidence on the sexual behavior between the daughter and stepfather. During this discussion, the prosecutor argued that respondent was entitled to secure testimony related to the circumstances of where the daughter was and what was occurring at the time appellant phoned her.

The court instructed respondent's counsel not to inquire specifically as to what happened in bed. Counsel followed this instruction and was allowed to lead the witness by agreement of counsel. Counsel for respondent elicited from the daughter the fact that appellant came into the girl's bedroom, became mad at the stepfather, that the stepfather left the bedroom and went downstairs, that appellant left the residence and that the stepfather returned to bed with the daughter. At this point and subsequent to the questions and responses on these matters, appellant's counsel asked for a bench conference which was granted. At this conference, counsel asked for a mistrial upon the premise that respondent's question —"And you ended up back in bed with him is that right?—was prejudicial. Appellant's counsel again referenced the motion in limine. The court overruled appellant's motion for a mistrial.

The further reference to the daughter's being in bed with the stepfather was prompted by appellant's cross-examination of the daughter. That cross-examination proceeded as follows:

"Q. And this was the first time and the only time you'd ever done anything at all like this with your Mother, is that right?

A. No.

Q. Had this occurred before? Had you ever gone over to another motel and had intercourse with other men?

A. Not with other men, no."

Redirect examination, in which respondent's counsel questioned the girl, proceeded as follows:

"Q. And Mr. Shull asked if you've ever done anything like that before, been to a motel before. You had, hadn't you?

A. Yes.

Q. And the morning ____

MR. SHULL: Your Honor, I'm going to object. May we again approach the bench?"

After a conference at the bench, appellant's objection was overruled and the questioning proceeded as follows:

"Q. Sure, you had previously been to a motel on many occasions, is that right?

A. Yes.

Q. And you went there with your mom and John Linder, is that right?

A. Yes.

Q. And you all went to bed together?

A. Yes."

The testimony relating to the daughter being in bed with her stepfather must be separated into two segments for disposition. The record shows there was never any evidence that the stepfather had intercourse with the daughter. In the first instance, this particular testimony was elicited to determine what the daughter, stepfather and appellant were doing when the argument between appellant and the stepfather ensued. The argument centered around appellant's discovery of the stepfather in bed with the daughter. Appellant then left the residence, called later and talked with the daughter. At the point of the phone call, the evidence revealed the daughter to be in bed with the stepfather. It must be noted that at the time of the call, the mother directed the daughter to get dressed. The daughter then handed the phone over to the stepfather. Following this action, the stepfather transported the daughter to the motel with full instructions, including the room number and the code word needed to gain admittance to the motel room.

■■■■ Appellant complains that the evidence showing the daughter in bed with the stepfather was so prejudicial that reversal of this cause is required. This court cannot agree. It is perhaps true that the location of the daughter at the time of the argument and the phone call were irrelevant and immaterial, and it cannot be said that this evidence was so prejudicial as to require reversal. A judgment resulting in conviction will not be reversed because of the admission of irrelevant and immaterial evidence which is not prejudicial, see *State v. Talbert*, 454 S.W.2d 1 (Mo.1970). Appellant claims that such evidence amounted to evidence of a separate and unrelated offense. The evidence does not show the daughter and stepfather engaged in intercourse. The evidence does show that the stepfather was intoxicated. Moreover, the evidence depicted the events surrounding the persons involved within a short interval prior to the offense charged, and the evidence complained of was the act of third parties, not appellant. There was no evidence linking appellant with any other criminal offense, see *Talbert, supra*. See also *State v. Jackson*, 519 S.W.2d 551 (Mo. App.1975).

Appellant desired to have the evidence relative to the argument admitted. This is evident upon the failure of the record to show any objection to that part of the evidence, coupled with the cross-examination of the daughter in which she stated she witnessed the stepfather arguing and striking appellant on prior occasions. The evidence regarding the daughter being in bed with the stepfather was inextricably interrelated with evidence surrounding both the argument and the later phone call from appellant. Appellant's attack on this portion of the evidence is without merit.

■■■ The second segment of the questioned evidence merely relates to clarification of answers given by the daughter upon cross-examination. While being questioned by appellant's counsel, the daughter testified she had never gone to a motel with other men. The purpose of this line of questioning was quite evident as an attempt by appellant to persuade the jury that appellant had not, in the past, participated in a course of action which involved her daughter in sexual misbehavior. On redirect examination, the daughter was asked to explain her answer which revealed that appellant, stepfather and daughter had been in motels and in bed together on prior occasions. Appellant opened this line of

questioning and cannot now be heard to complain that the responses, including clarification, were prejudicial to her. Appellant's attack on this later segment likewise has no merit. Point (5) is ruled against appellant.

The court notes from the record that appellant persistently made the job of her counsel a most difficult one. By the same token, the record reveals a vigorous and thorough defense prepared and offered by defense counsel.

For the reasons set forth herein, the judgment is in all respects affirmed.

All concur.