**STATE of Missouri,
Plaintiff-Respondent,**

**v.**

**Kara BURGESS, Defendant-Appellant.**

**No. 46501.**

Missouri Court of Appeals,
Eastern District,
Division Four.

April 24, 1984.

Terry A. Bond, Clayton, for defendant-appellant.

Stephen D. Bouchard, Hillsboro, for plaintiff-respondent.

SMITH, Judge.

Defendant appeals from her jury conviction for prostitution and the resultant $500 fine. On appeal she asserts the failure of the state to prove a violation of Sec. 567.-020 RSMo 1978. This assertion is based upon two premises—(1) that no sexual contact as defined by the statute occurred and (2) that her conduct was not "in return for something of value." We set forth the facts in the light most favorable to the conviction, recognizing the existence of some dispute in the evidence.

Defendant is a waitress and, by her definition, a dancer at the Span Disco in Arnold. The Span Disco is a tavern containing a horseshoe shaped bar and an elevated stage along with tables. Two undercover police officers, Speidel and Brase, went to the Disco late one afternoon. In addition to a number of customers three waitress/dancers were also present. Defendant's "uniform" consisted of two patches of cloth connected by a thin string on the upper half of her body, and a single patch and a string on the lower half. The single patch covered her vaginal area leaving her buttocks bare.[1] The uniform also contained sequins and fringe. The other two waitress/dancers were garbed in slightly different but similarly revealing attire. One was additionally adorned with a number of bills of U.S. currency tucked under her strings. The dancing of all three women was comparable. Each performed a dance on the stage which the police officers described as a "modern" erotic dance but which from the description bears considerable similarity to the not-so-modern erotic dance routine commonly labeled "bumps and grinds."

After each dancer had completed the stage routine she would leave the stage and offer to perform a "table" dance for individual male customers. Defendant performed such a dance for Speidel. This dance consisted of the dancer standing on the chair occupied by the male patron with her feet between his parted legs. She would then perform a series of hip gyrations and squatting movements. During this performance she would also place one leg over the patron's shoulder and rub the single patch across his mouth and nose.[2] This is the action upon which the state bases its case. In addition the dancer would rub the two patches in the face of the patron and the single patch across his stomach and lower abdomen. Because the women considered themselves dancers, not magicians, they received support and balance during this performance by periodically touching the ceiling and from manual support from the patron through placement of his hands on her buttocks and the back of her upper thighs.

After having performed the "table" dance for officer Speidel defendant got down from the table. Speidel then stated he would like to tip her but did not know where to place the money. Defendant revealed a zippered pocket in the single patch into which Speidel placed a dollar bill.[3] He testified the bill joined a series of preexisting companions in the pocket. Following her performance for Speidel, defendant was arrested and charged with prostitution.

---

1. Defendant denied her buttocks were bare contending she was wearing a bikini bottom. She also testified she was wearing panty hose. The police officers did not directly address the panty hose issue.

2. Defendant denied making contact with the patron's face. As to the dance for Speidel, she supported this by evidence that he had a lighted cigar in his mouth. Speidel admitted to a short unlit cigar stub.

3. Despite the prior contact to which Speidel testified, he was not previously aware of the zipper. He testified the patch was soft.

Sec. 567.020 RSMo 1978 sets forth the misdemeanor of prostitution. Before its enactment there was no state law prohibiting prostitution, although the matter was regulated by municipal ordinances and through state statutes dealing with activities related to prostitution. *See* Secs. 563.-010–.140 RSMo 1969. Sec. 567.020 provides in pertinent part:

"A person commits the crime of prostitution if he performs an act of prostitution."

"Prostitution" is defined in Sec. 567.-020(2) as follows: "a person commits 'prostitution' if he engages or offers or agrees to engage in sexual conduct with another person in return for something of value to be received by the person or by a third person; ..."

In turn "sexual conduct" is defined in Sec. 567.010(4) as follows:

"Sexual conduct occurs when there is ... (c) 'sexual contact' which means any touching, manual or otherwise, of the anus or genitals of one person by another, done for the purpose of arousing or gratifying sexual desire of either party."

Sec. 567.010(5) states that " '[s]omething of value' means any money or property, or any token, object or article exchangeable for money or property."

■ It may be conceded that defendant's performance was in bad taste and conceivably in violation of Sec. 573.030 RSMo 1978—Promoting pornography in the second degree. But, there is no law against bad taste[4] and defendant is not charged with pornography. Her guilt must be premised upon violation of Sec. 567.020—Prostitution. Prior to the enactment of the current statute, courts of this state have defined prostitution as "the practice of a female offering her body to an indiscriminate intercourse with men; common lewdness of a woman for gain; the act of permitting common and indiscriminate sexual intercourse for hire." *City of St. Louis v. Green,* 190 S.W.2d 634 (Mo.App.1945) [2, 3].

■ Possibly in recognition of the dubious constitutional generality of a term such as "common lewdness," the General Assembly has adopted in the present statute a more explicit definition of prostitution. That definition is obviously broader than the prior judicial definition both in the greater species of conduct prohibited and the gender-neutral nature of its prohibitions. *State v. Kayser,* 552 S.W.2d 27 (Mo. App.1977). It is, however, a criminal statute and must be construed strictly against the state. We are not justified in interpreting the statute to include acts not clearly described in the statute. *State v. Chadeayne,* 323 S.W.2d 680 (Mo. banc 1959) [3, 4]; *State v. Kayser, supra,* [2–6]. There is no question the present statute proscribes commercial sexual conduct including but not limited to sexual intercourse. The question before us is whether it proscribes the conduct of the defendant.

■ The state points to the terms "any touching manual or otherwise" as supporting a conclusion that "skin to skin" contact is not required. We have no quarrel with that conclusion. The language is sufficiently broad to encompass touchings made with other than the bare skin of the person touching, as for instance with contrivances. But the question before us is not the means to effectuate the touching, but rather what must be touched. The language is quite specific. That which is touched must be the "anus or genitals" of a person. That language does not on its face include the clothing covering the genitals or anus. We cannot conclude that the language is equally prohibitive of touching whether the touchee is nude or wearing a mackinaw, or that it would apply to a fully clothed couple dancing pelvis to pelvis where one of them is being paid for the dance. At the most, the language is ambiguous as to whether such conduct is condemned.

We are justified in considering in this regard the language of Secs. 566.100–.120 RSMo 1978, a part of the same Senate bill and passed at the same time as Sec. 567.-

---

**4.** A fact which must be reassuring to much of    the modern entertainment industry.

020. Secs. 566.100–.120 deal with the crimes of sexual abuse in its three degrees and include the term "sexual contact." For purposes of those statutes "sexual contact" is defined in Sec. 566.010(3) to mean "any touching of the genitals or anus of any person, or the breast of any female person, or *any such touching through the clothing,* for the purpose of arousing or gratifying sexual desire of any person." [5] (Emphasis supplied) Sec. 566.100 *et seq.* and 567.020 are intended to protect against different evils. The former are assault crimes which are prohibited to protect the unconsenting, or those unable to legally consent, from offensive sexual conduct. The latter is a prohibition against consensual sexual activity for commercial purposes. We cannot view the difference in language chosen as inadvertent. The inclusion of the emphasized "clothing" provision in Sec. 566.010(3) is consistent with the nature of the crime to which it relates—offensive sexual conduct. The omission of such a provision in Sec. 567.010 is equally consistent with the traditional concept of prostitution and with at least one of the prime purposes of prohibition of prostitution— spread of venereal infection. *See* Comment to 1973 Proposed Code following Vol. 40A V.A.M.S. Sec. 567.020. It is evident that where the General Assembly desired to provide that a touching through clothing was prohibited, it expressly so stated. It did not do so in Sec. 567.020, and we must conclude it did not intend for such a touching to constitute prostitution. We are unable to find therefore that Sec. 567.020 is violated by a touching of clothing covering the genitals.

■ The evidence here is undisputed that the touching between Speidel and defendant upon which the prosecution was based involved the clothing covering defendant's genitals, not the genitals themselves. As such it was insufficient to support a conviction. In view of our conclusion it is unnecessary to reach the question of whether the dance was performed "in return for something of value."

Judgment reversed.

STANLEY A. GRIMM, Special Judge, concurs.

GAERTNER, P.J., dissents with opinion.

GAERTNER, Presiding Judge, dissenting.

I dissent. I cannot accept the distinction between the bare skin of the touchee and the bare skin of the toucher which is used in the majority opinion for the purpose of creating an ambiguity in order to justify looking beyond the words of the statute to divine legislative intent.

Judicial construction of legislative enactments is narrowly restricted by well-defined parameters. "The primary principle and the primary rule of construction is to ascertain the intention of the General Assembly from the words used in the statute in order to effectuate the true intent of the legislature." *State ex rel. Peach v. Bloom,* 576 S.W.2d 744, 746 (Mo. banc 1979). Words must be accorded their plain and ordinary meaning. *State v. Burnau,* 642 S.W.2d 621, 623 (Mo. banc 1982). While criminal statutes are to be construed liberally in favor of defendants and strictly against the State, nevertheless "[t]he rule of strict construction is not violated by according the language used by the legislature its full meaning in support of the policy and aim of the enactment. The rule does not compel a narrow or forced construction, out of harmony with the manifest purpose and intent of the statute or one which would exclude cases from it that are obviously within its provisions." *State v. Shell,* 571 S.W.2d 798, 800 (Mo.App. 1978).

The manifest purpose and intent of the prostitution statute is to outlaw the commercialization of the arousal or gratifica-

5. We also note the definition of "sexual conduct" in Sec. 573.010(10) RSMo which utilizes the terms "physical contact with a person's clothed or unclothed genitals" and the use in Sec. 573.010(13) of the phrase "unclothed genitals." Both of these sections were also part of the same Senate Bill as Secs. 567.020 and 566.-010(3).

tion of sexual desire. As noted by the majority, the present statute is broader than the prior judicial definitions of prostitution in that the statute is gender-neutral in application and in that the prohibited conduct is not limited to sexual intercourse. A further addition made by the statute was the inclusion within the statutory proscription of the patronizing of a prostitute, § 567.030, RSMo 1978. Thus, not only is the selling but also the buying of sexual gratification now prohibited. The comment to 1973 Proposed Code following Volume 40A VAMS § 567.030, noting that this provision is new to Missouri Law, sets forth among the reasons for its adoption that it is unjust to punish the prostitute alone; the patrons should be subject to the same punishment. Since both are participating in the purchase and sale of sexual gratification, they are equally guilty. I submit the same equality should be applied to the clothed and the unclothed who indulge in commercialized sexual touching for the purpose of arousing or gratifying sexual desire. The core of the statutory condemnation of both prostitution and patronizing is the purpose, the culpable mental state, with which both parties enter into and carry out a financial transaction. I cannot accept the conclusion that the legislature intended to base a distinction between guilt and innocence of those who engage in sexual conduct with such a culpable mental state upon who wore what and where. Such a conclusion can only be reached by the very "narrow or forced construction, out of harmony with the manifest purpose and intent of the statute" which is condemned by *State v. Shell*, 571 S.W.2d at 800.

I also disagree with the interpretation given in the majority opinion to the statutory phrase "any touching, manual or otherwise" as being limited to the touching of genitals by a contrivance. Such emphasis upon the accoutrements with which the parties accomplish the touching renders insignificant what is the real gist of the offenses—the giving and receiving of something of value as a consideration for sexual arousal or gratification.

I see nothing intrinsically ambiguous in the phrase "any touching, manual or otherwise" when read in the context of a statute proscribing a commercial transaction undertaken to fulfill a particular purpose. Where the touching is performed for the purpose of arousal or gratification of sexual desire and in exchange for something of value, to read into the words "any touching" a distinction between direct or indirect conduct is, in my judgment, an unnecessary and uncalled for complication of plain, ordinary language. To exclude a touching through what the evidence describes as "a real thin satin-type material" is to overlook the word "otherwise."

It seems to me the majority opinion has approached the task of determining legislative intent from the wrong direction. Only by first observing that other sections of the Criminal Code use different language can limits and qualifications be imposed upon the plain, ordinary meaning of simple words such as "any" or "otherwise." The entire phrase, "any touching, manual or otherwise," is neither limited, qualified nor ambiguous unless and until we look beyond the words themselves and the context in which they are used by the legislature. But to do so where there is no intrinsic ambiguity is to use a rule of statutory construction intended to resolve ambiguities as a means of begetting an ambiguity which does not exist. When the language of the statute is clear and unambiguous on its face "this court should ... abstain from foraging among various peripheral rules of construction for the purpose of rewriting a statute under the guise of construing it." *Jackson v. Wilson*, 581 S.W.2d 39, 44 (Mo. App.1979). Since the language of § 567.-010(4)(c), given its plain, ordinary meaning, is intrinsically clear and unambiguous, I would hold we are precluded from comparing it to other legislative enactments.

Further, I would reject the contention of defendant, not reached by the majority, that the evidence failed to show that the sexual conduct was "in return for something of value" because there was no dis-

**642**

cussion of money until after the completion of the dance.

"[I]t is not necessary that illicit promises or arguments [agreements] to engage in unlawful sexual activities be in any form of expression or words, but such illicit promises or agreements may be inferred from all the attending circumstances. *City of St. Louis v. Long*, 395 S.W.2d 481 (Mo.App.1965)"

*State v. Linder*, 613 S.W.2d 918, 925 (Mo. App.1981).

The inferences which the jury could reasonably draw from the evidence amply support the conclusion that defendant's performance of the "table" dance was in return for money. The evidence that each and every patron who was subjected to such intimacies was seen to tender money to the performer was sufficient to create an inference of a custom and an expectation on the part of the performer that she would be compensated for her endeavors. The costume with the zippered pocket containing currency also leads to an inference that defendant expected to receive payment following her performance.

Commercial exploitation of sexual desire and gratification has been denounced throughout the recorded history of mankind because of its disruptive affect upon the family, the basic unit of society. Because I believe the Missouri Legislature intended to proscribe such commercial exploitation by whatever means and in whatever manner it may be accomplished, I dissent.