**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Marsha Christine FREDRICKSON,**
**Defendant-Appellant.**

**No. 47065.**

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 4, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 9, 1985.

Case Transferred to Supreme Court Feb. 28, 1985.

Case Retransferred to Court of Appeals May 17, 1985.

Original Opinion Reinstated May 28, 1985.

Ronald Joel Kaden, St. Louis, for defendant-appellant.

Kristie Lynne Green, Bruce Farmer, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

KELLY, Presiding Judge.

Appellant was charged with knowingly promoting prostitution in the second degree, § 567.060, RSMo 1978.[1] A jury found her guilty and appellant was sentenced to 60 days in the county jail and fined $2,500.00.

On September 29, 1981, Detectives Savetz and Gilyon of the St. Louis County Police Department were at their office in Clayton when they received a visit from a confidential informant, identified as Tim Ayers. Ayers informed Savetz of an "outcall" service operating in St. Louis County where the services of a prostitute could be obtained. A phone call was made to the service, operated by appellant, from the police headquarters. This call was recorded and played to the jury. A meeting was arranged with two prostitutes for that evening at the Ramada Inn, located at 6926 South Lindberg in St. Louis County. A price of $200.00 per girl for the evening was agreed to. A transcript of a tape recording of Ayers' call was made and played for the jury.

1. All statutory references are to RSMo 1978.

Detectives Savetz and Gilyon went to the Ramada Inn at approximately 10:00 p.m. that night and took along some props, including clothing, suitcases, beer, etc. Mr. Ayers, the informant, arrived a few minutes later. The appellant and another female, Sherry Richardson, arrived at approximately 12:30 a.m. Informant left approximately 30 minutes later.

After some small talk, appellant initiated a conversation about sex, indicating to Detective Savetz that "we better take care of business." Savetz asked her what she meant and appellant said: "The money, sweetheart. Let's take care of the money." Savetz indicated that Mr. Ayers had related a price of $150.00 per girl. Appellant said: "No, that's not correct. We agreed on $200.00 per girl for the rest of the evening." Appellant, however, agreed to take the lesser sum because she was late in arriving at the hotel.

Detective Savetz then asked her what they would get for their money. Appellant replied that they would receive intercourse between both girls for each man and, if desired, a swap of partners. Appellant also replied that they would supply some additional entertainment, such as a view of two women engaged in sexual intercourse.

Detective Savetz then asked Sherry Richardson if appellant was her boss and Miss Richardson indicated that appellant was, in fact, her employer. Miss Richardson said she had worked for appellant for about two months. Detective Savetz then gave appellant $300.00 in marked twenty-dollar bills.

Appellant had previously removed her nylons and had pulled her dress up around her waist. Appellant was reclining back on the bed and was not wearing any underpants at the time. Appellant asked Detective Savetz to "stick the money in her mailbox." Appellant then took the money and began rubbing it around on her crotch. Appellant then gave the money to Sherry Richardson who put it in her purse.

At this time, Detective Savetz retrieved his badge and placed appellant and Sherry Richardson under arrest. The money was eventually recovered at the county hospital from a nurse who was given the money by Sherry Richardson when she informed her that the police had requested a search of her body cavities.

Appellant denied that the girls went to the Ramada Inn for the purpose of performing acts of prostitution. She testified that she owned and operated a massage parlor at 127 Fiedler Lane in Jefferson County. She testified as to the various types of massage and other health services she provided. She also testified that her understanding of the phone call she had with Tim Ayers was that she was to help entertain him and his friend and that the appointment was to be for escort service, dancing and dining.

On appeal the appellant challenges the sufficiency of the evidence claiming that as a matter of law the appellant cannot be convicted of promoting prostitution in the second degree because only one other prostitute, other than herself, was involved in the prostitution activity.

Appellant was convicted of *Promoting Prostitution in the Second Degree*, § 567.-060. The statute provides:

1. A person commits the crime of promoting prostitution in the second degree if he knowingly promotes prostitution by managing, supervising, controlling or owning, either alone or in association with others, a house of prostitution or a prostitution business or enterprise involving prostitution activity by *two* or more prostitutes.

2. Promoting prostitution in the second degree is a class C felony.

Reference must necessarily be made to § 567.010 to determine the meaning of "promoting prostitution," as that term is used in § 567.060.

Section 567.010 contains definitions of the terms used in the Chapter, and provides that "promoting prostitution" means:

1. "Promoting prostitution", a person "promotes prostitution" if, *acting other than as a prostitute* or a patron of a prostitute, he knowingly

(a) Causes or aids a person to commit or engage in prostitution; or

(b) Procures or solicits patrons for prostitution; or

(c) Provides persons or premises for prostitution purposes; or

(d) Operates or assists in the operation of a house of prostitution or a prostitution enterprise; or

(e) Accepts or receives or agrees to accept or receive something of value pursuant to an agreement or understanding with any person whereby he participates or is to participate in proceeds of prostitution activity; or

(f) Engages in any conduct designed to institute, aid or facilitate an act or enterprise of prostitution; ... (emphasis ours).

In comments to the Code of § 567.010, the following is found in Vol. 40A V.A. M.S., p. 792:

The one term, "promoting prostitution," eliminates the need for separate statutes on procuring, pimping, transporting for purpose of prostitution, keeping a house of prostitution or leasing premises for such activity, profiting from prostitution, and includes any other "conduct designed to institute, aid or facilitate an act or enterprise of prostitution" as well as "profiting from prostitution." As in the case of the historical distinctions drawn between larceny, stealing by deceit, embezzlement and false pretenses, which no longer have criminological significance in Missouri, the statutory distinction between "advancing" and "profiting" from prostitution has no significance.

Note that subsection (1) excludes prostitutes and patrons because their conduct is specifically covered in Sections 567.020 and 567.030 ...

Our standard of review in this case requires that we view the evidence in the light most favorable to the state and

accept all legitimate inferences fairly deducible therefrom tending to support the verdict and to reject contrary and contradictory evidence. *State v. Charity,* 637 S.W.2d 319, 321[4] (Mo.App.1982). However, this case involves the interpretation of a criminal statute, specifically Chapter 567. The long standing rule in Missouri is that criminal statutes must be construed strictly against the state and liberally in favor of the defendant. *State v. Treadway,* 558 S.W.2d 646, 652[15] (Mo. banc 1977). Statutes defining crimes will not be interpreted as embracing any but those acts or omissions clearly described in the statute both within the letter and spirit of the law. *State v. Chadeayne,* 323 S.W.2d 680, 683[4] (Mo. banc 1959); *State v. Pickett,* 535 S.W.2d 542, 544[2] (Mo.App.1976); *State v. Alderman,* 500 S.W.2d 35, 36[2] (Mo.App.1973). No person may be made subject to a criminal statute by guesswork or mere implication and a criminal statute may not be held to include offenses or persons other than those clearly described and provided for within both the spirit and the letter of the statute. If there is a fair doubt whether the act charged and proved is embraced within the prohibition, that doubt must be resolved in favor of the accused. *State v. Kayser,* 552 S.W.2d 27, 30[4] (Mo.App.1977). The reason for this rule of strict construction is found in the tenderness and solicitude of the law for individuals and on the principle that it is the duty of the legislature, and not the courts, to define a crime and ordain its punishment. *State v. Reid,* 125 Mo. 43, 28 S.W. 172, 173 (1894); *State v. McClary,* 399 S.W.2d 597, 599[3] (Mo.App.1966).

■ Appellant's claim, reduced to its simplest terms, is that the state's evidence was that she was acting as a prostitute and therefore she cannot be charged with promoting prostitution because the definition of promoting prostitution excludes one who is also acting as a prostitute; thus, since only one other prostitute was involved in this activity, she cannot be convicted of promoting prostitution in the second degree. Due to the inherent constraints of the English language and our requirement

of strict construction we are inclined to agree.

The facts of this case present a case of first impression in our state. Section 567.060 became effective on January 1, 1979. Since that time, so far as we have been able to ascertain, no appellate court in this state has considered this question. Neither party to this appeal has cited any authority and our independent research has surfaced none.

The state, however, argues that *State v. Linder,* 613 S.W.2d 918, 922[2] (Mo.App. 1981) supports its position. The court in *Linder,* at p. 922, said:

> The fact that appellant had previously engaged in prostitution, a fact not conceded by appellant, does not, by construction of the applicable statutes preclude prosecution for the promoting of prostitution under *§ 567.050.* In other words, a prostitute, if warranted by particular facts and circumstances, can, by the commission of certain acts, also be charged for the promotion of prostitution. The mere fact that the accused is a prostitute does not exclude that person from § 567.050. (Emphasis supplied).

However, *Linder* was convicted under § 567.050.1(2), Promoting Prostitution in the First Degree. The essential element in a prosecution under that statute is "promoting prostitution of a person less than sixteen years old." The fact that Linder, the mother of the young girl, had previously prostituted herself to two men and *thereafter* promoted the prostitution of her daughter, who was less than sixteen years of age, to the same men was immaterial.

This present case concerns the single act or transaction surrounding the procurement by the informant of two prostitutes for two undercover detectives. We are of the opinion that the legislature clearly meant to define separate crimes and punishments for prostitution and those who promote prostitution. The two roles are, in our judgment, mutually exclusive in the same transaction, and therefore the appellant cannot be charged with promoting her

own prostitution because if she can be so charged, every prostitute could be charged with Second Degree Promotion for having promoted herself.

Appellant was indicted and convicted of Knowingly Promoting Prostitution in the Second Degree by managing a prostitution enterprise involving prostitution activity by *two or more prostitutes* at Ramada Inn, 6926 South Lindberg. Section 567.010.1 specifically excludes persons acting as a prostitute or a patron of a prostitute from the definition of those persons who may promote prostitution. The Comments to this section of the statute contain the following statement: "Note that subsection (1) excludes prostitutes and patrons because their conduct is specifically covered in Sections 567.020 and 567.030." At most, the evidence shows that appellant may have managed a prostitution activity involving only one prostitute and that is not sufficient to sustain a conviction under § 567.060.

Appellant's conviction is therefore reversed and she is ordered discharged.

STEWART and SNYDER, JJ., concur.