**STATE of Missouri, Respondent,**

v.

**Theresa B. GOUVION, Appellant.**

**No. WD 38745.**

Missouri Court of Appeals,
Western District.

June 30, 1987.

Robert G. Duncan, Kansas City, for appellant.

Albert A. Riederer, Pros. Atty., Robert Frager, Asst. Pros. Atty., Kansas City, for respondent.

Before GAITAN, P.J., and NUGENT and MANFORD, JJ.

NUGENT, Judge.

Defendant Theresa B. Gouvion seeks reversal of her conviction by a jury of prostitution for insufficiency of the evidence. In essence, she claims that the trial court erred in overruling her motions for acquittal because the evidence does not show her unequivocal verbal agreement to engage in sexual intercourse for money. We affirm the conviction for the reasons set forth below.

Detective John R. Stewart testified that he met the defendant on the evening of October 9, 1985, in the course of the vice unit's investigation of various escort agencies for prostitution activities. That evening, Detective Stewart and several other officers obtained two rooms at a hotel. Detective Stewart occupied one of the rooms in an undercover capacity and the

other officers waited in the other room for "backup." The team installed a monitoring device in Detective Stewart's room but no recording was made.

Detective Stewart telephoned the Apple Escort Agency. Defendant Gouvion eventually came to his room, identified herself as Tiffany, and said that she was from the agency. Upon entering the room, she "looked over the room fairly well," checking the bathroom, looking behind the curtains, and making certain that the door to the adjoining room was locked. Then she asked the detective for two pieces of identification. He handed her his driver's license and MasterCard. In answer to her question about the discrepancy between the address on his driver's license and the fictitious address he had given the agency over the phone, the detective told her that he was now living with his father.

At that point, the defendant collected the $25 agency fee. Detective Stewart then said that he had been told that the girls are given a $150 tip. Defendant said nothing, but smiled and pointed toward the ceiling. The detective asked if $200 would be appropriate, and the defendant again pointed upward. When Detective Stewart said $250, the defendant nodded. He asked her what she would do for that kind of money. She responded, "The nicer you are to me, the nicer I will be to you." He asked her if they had to go anywhere, and she assured him that they need not leave the hotel room. He gave her the $250. Then she called the agency to say that everything was all right. Detective Stewart asked her if she had driven herself to the hotel. She explained that somebody else had driven her but would remain outside the room unless something occurred.

The defendant asked to use the bathroom, and as she walked toward it she told Detective Stewart to "get comfortable" and pulled at her clothing a little bit. He took that as a suggestion that he undress but he remained fully clothed. When the defendant returned from the bathroom, he asked defendant "if she would have straight sex with [him] for money." Once more she responded, "The nicer you are to

me, the nicer I will be to you." When the defendant asked him why he was not yet comfortable, he asked her the same question. She explained that she would prefer that he get comfortable first to assure her that no one would burst in on them and that she would get comfortable afterward. Detective Stewart asked her who would rush into the room, and she responded, "Nobody. If you did not know who, then nobody, so don't worry about it. I'm just being careful."

Detective Stewart then stripped to his shorts and walked toward the bed where she was seated. She took hold of the waistband of his shorts and started to pull them down. To prevent her from removing his shorts he sat down and started another conversation. He asked her again why she had not removed any of her clothes. Again she said, "The nicer you are to me, the nicer I will be to you." Then he asked her if she would have sexual intercourse with him "and not run out the door." She nodded her head up and down but made no verbal reply. At that moment, Detective Stewart opened the door to admit the other officers and placed the defendant under arrest for prostitution.

## I.

The defendant argues that the evidence fails to show that she agreed to engage in sexual intercourse in exchange for money and is, therefore, insufficient to support her conviction for prostitution. She points out that Detective Stewart voluntarily gave her a $250 tip and that the only discussion of what was to be involved in the defendant's services before the tip was given concerned whether or not they had to leave the hotel room. After he gave her the tip, he asked her what she would do for that kind of money. Her reply then and on several other occasions was simply, "The nicer you are to me, the nicer I will be to you." Later, when he asked her if she would engage in "straight sex for money," she gave the same reply. She remained fully clothed the entire time and never made any verbal statement as to what she would do other than that she would be nice.

Finally, forty or fifty minutes after she had received the tip, the defendant nodded her head affirmatively when the detective asked her if she would have sexual intercourse with him and not run out the door. She insists that this had nothing to do with the tip she had accepted nearly an hour before: The money was merely a gratuity and *nothing in the record indicates that she was to return it if she did not have, or agree to have, sexual intercourse with him.* According to the defendant, "Many a flower, box of candy, or even expensive gift has been given by a man in the hope that his date will succumb to his advances. The acceptance of such gifts does not make the object of his desires a prostitute."

The jury convicted the defendant of prostitution, a class B misdemeanor defined in § 567.020.1[1] as follows: "A person commits the crime of prostitution if he performs an act of prostitution." Section 567.-010(2), in defining the word "prostitution", states that "a person commits prostitution if he engages or offers or agrees to engage in sexual conduct with another person in return for something of value to be received by the person or by a third person. ..."

■ The defendant's unequivocal verbal agreement to engage in sexual conduct in return for money is not necessary to justify conviction. In *City of Saint Louis v. Long*, 395 S.W.2d 481, 483 (Mo.App.1965), the court held that a promise or agreement to engage in sexual intercourse in exchange for money, like a "solicitation," need not be in any particular form of words. *See also State v. Linder*, 613 S.W.2d 918, 925 (Mo.App.1981). Indeed, words may not be necessary at all. *Kansas City v. Martin*, 369 S.W.2d 602, 605 (Mo.App.1963), relied on by the *Long* court, held that a solicitation for immoral purposes may well be accomplished "by gesture or other indication quite as effectively as by the use of any set or particular formula of language."[2]

The precise question on this appeal is whether the evidence was sufficient to support the jury's finding that the defendant agreed—either expressly or by implication—to engage in sexual conduct for money.

The role of the jury is to weigh the evidence to determine beyond a reasonable doubt whether defendant was guilty of the offense charged. The task of the reviewing court is not to weigh the evidence again but rather to determine whether the evidence, viewed in the light most favorable to the state, is sufficient to support the verdict. In doing so, we must accept as true all evidence and inferences that tend to support the verdict and disregard all evidence and inferences to the contrary. *State v. Brown*, 660 S.W.2d 694, 698–99 (Mo.1983) (en banc); *State v. Reed*, 453 S.W.2d 946, 949 (Mo.1970); *State v. Cobb*, 444 S.W.2d 408, 412 (Mo.1969) (en banc).

■ Here ample evidence supports defendant Gouvion's conviction for prostitution. An agreement to engage in unlawful sexual activities may be inferred from all the attending circumstances. *Linder, supra,* 613 S.W.2d at 925. *See also State v. Burgess*, 669 S.W.2d 637, 641–42 (Mo.App. 1984) (dissenting opinion). In the present case, although Detective Stewart voluntarily offered a tip of $150, the defendant bargained for more by gesturing toward the ceiling. She did not accept the money until he had offered her the appropriate sum, $250. In addition, when she first arrived she carefully checked the bathroom, behind the curtains and the door to the adjoining room. She asked for two pieces of identification and questioned the detective about his address. She suggested that he "get comfortable" and pulled at her clothes, hinting that he should undress. When he remained fully clothed and asked her why she had not gotten comfortable,

---

1. Now found in Missouri Revised Statutes, 1986.

2. According to the Comment to the 1973 Proposed Code prepared by the Committee to Draft a Modern Criminal Code, the definition of prostitution contained in subsection (2) covers solicitation and the act of sexual conduct need not be completed to find prostitution. See § 567.-010, Vernon's Annotated Missouri Statutes (1979) at 793.

she explained her concern about unknown people rushing into the room. After the detective undressed, she started to pull his shorts down. She nodded affirmatively when he asked if she would engage in sexual conduct and not run out of the room.

Although defendant's standard response to the detective's requests for sexual intercourse for money was "The nicer you are to me, the nicer I will be to you," the jury could properly have inferred from a variety of additional facts that she thereby agreed to engage in sexual conduct for money.

Accordingly, we affirm her conviction.

All concur.